**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FOTOBOM MEDIA, INC., | |
| *Plaintiff*, | Case No. 22-cv-00712 (APM) |
| v. | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| *Defendant*. | |

**PLAINTIFF FOTOBOM MEDIA, INC.'S MOTION**
**TO EXCLUDE EXPERT TESTIMONY**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ....................................................................................................1

BACKGROUND ......................................................................................................2

LEGAL STANDARD ..............................................................................................5

ARGUMENT ..........................................................................................................6

I.    The Court Should Exclude Dr. Jacob Wobbrock's Opinions In Their Entirety .................6

    A.    The Opinions in Dr. Wobbrock's Opening Report Are Not Supported by
        Any Reliable Methodology and Are Unhelpful to the Jury ....................................6

        1.    Dr. Wobbrock's Opinions About How Consumers Would Have
            Perceived Keyboard+ Are Unreliable and Unhelpful ..................................7

        2.    Dr. Wobbrock's Opinions About How Consumers Would Have
            Perceived Gboard Are Unreliable and Unhelpful ......................................14

        3.    Dr. Wobbrock's Opinions About the iOS Keyboard Are Unreliable
            and Unhelpful.............................................................................................16

        4.    Dr. Wobbrock's Opinions Regarding the Importance of Keyboards
            to the User Experience and Ease of Switching Should Be Excluded ........19

    B.    Dr. Wobbrock's Rebuttal Opinions Confirm That His Opening Report
        Should Be Excluded and Are Likewise Inadmissible Under Rule 702 .................22

        1.    Dr. Wobbrock's Opinions Are Not Within the Proper Scope of
            Rebuttal Testimony Under Rule 26 ...........................................................23

        2.    Dr. Wobbrock's Rebuttal Opinions and User Study Should Also
            Be Excluded Because They Are Unreliable and Unhelpful.......................25

II.   The Court Should Exclude Certain Opinions Offered by Mr. Sean Kruskol ...................29

    A.    Mr. Kruskol's Opinion That Ms. DeMario Should Have "Probability
        Adjusted" But-For World Events Is Incompatible with the Governing
        Legal Standard and Lacks a Reliable Methodology ...............................................30

        1.    Mr. Kruskol's Probability-Adjustment Opinions Undermine
            Established Law That an Antitrust Plaintiff Need Only Offer a
            Reasonable Damages Estimate ..................................................................31

    2.      Mr. Kruskol's Calculations Purporting To Correct for the Lack of Probability Adjustments Are Unreliable ................................................... 35

   B.     Mr. Kruskol's "Illustrative" Damages Adjustment Is Unreliable .......................... 35

III.    The Court Should Exclude Certain Opinions Offered by Dr. Kostis Hatzitaskos ............ 37

   A.     The Court Should Exclude Dr. Hatzitaskos's Opinions Regarding the Quality, Value, and User Experience of Keyboard+ ................................................ 37

           1.      Dr. Hatzitaskos's Opinions Exceed His Qualifications ............................ 38

           2.      Dr. Hatzitaskos's Opinions Are Unreliable *Ipse Dixit* .............................. 39

           3.      Dr. Hatzitaskos's Opinions Are Unhelpful ................................................ 41

   B.     This Court Should Exclude Dr. Hatzitaskos's Opinions That Attempt To Relitigate Several Issues Decided in Prior Litigation ............................................. 42

CONCLUSION .................................................................................................................... 43

# TABLE OF AUTHORITIES

Page

## CASES

*Acetaminophen-ASD-ADHD Prods. Liab. Litig., In re*,
   2024 WL 3357608 (S.D.N.Y. July 10, 2024) ........................................... 17

*Alfred v. Mentor Corp.*,
   479 F. Supp. 2d 670 (W.D. Ky. 2007) ................................................... 11

*Am. Customer Satisfaction Index, LLC v. ForeSee Results, Inc.*,
   2023 WL 145000 (E.D. Mich. Jan. 10, 2023) .......................................... 24

*Apex Fin. Options, LLC v. Gilbertson*,
   2022 WL 605692 (D. Del. Jan. 31, 2022) ............................................ 35, 37

*Autozone, Inc., In re*,
   2016 WL 4208200 (N.D. Cal. Aug. 10, 2016) .......................................... 29

*Avocados Plus Inc. v. Johanns*,
   421 F. Supp. 2d 45 (D.D.C. 2006) ...................................................... 27

*Bigelow v. RKO Radio Pictures, Inc.*,
   327 U.S. 251 (1946) ....................................................................... 34

*Blake v. Securitas Sec. Servs., Inc.*,
   292 F.R.D. 15 (D.D.C. 2013) ............................................................ 23

*Campbell v. Nat'l R.R. Passenger Corp.*,
   311 F. Supp. 3d 281 (D.D.C. 2018) ........................................... 14, 26, 41

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of U.S.*,
   78 F. Supp. 3d 208 (D.D.C. 2015) .................................................. 37, 41

*ChromaDex, Inc. v. Elysium Health, Inc.*,
   2020 WL 1279236 (C.D. Cal. Jan. 16, 2020) ........................................ 8, 9

*Cleaver v. Transnation Title & Escrow, Inc.*,
   2024 WL 326848 (D. Idaho Jan. 29, 2024) ............................................ 25

*Cohlima v. Ardent Health Servs., LLC*,
   254 F.R.D. 426 (N.D. Okla. 2008) ...................................................... 16

*Countrywide Fin. Corp. Mortg.-Backed Sec. Litig., In re*,
   984 F. Supp. 2d 1021 (C.D. Cal. 2013) ................................................ 28

*Curtis v. Wilks*,
   2013 WL 1283483 (N.D. Ill. Mar. 26, 2013) ................................................ 21

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ................................................................................... 5, 42

*Davenport v. Safeway, Inc.*,
   2022 WL 4379016 (D.D.C. Sept. 22, 2022) ................................................. 13

*Dome Patent, L.P. v. Rea*,
   59 F. Supp. 3d 52 (D.D.C. 2014) ................................................................. 38

*Eastman Kodak Co. of New York v. Southern Photo Materials Co.*,
   273 U.S. 359 (1927) ................................................................................ 32, 33

*EEOC v. Bloomberg L.P.*,
   2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010) ............................................. 12

*Elec. Books Antitrust Litig., In re*,
   2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014) ......................................... 19, 38

*Evans v. Aramark Sports & Ent. Servs., LLC*,
   2022 WL 19520781 (D.D.C. Nov. 22, 2022) ................................................ 12

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
   636 F. Supp. 3d 144 (D.D.C. 2022) ............................................................... 8

*Faulkner v. Arista Records LLC*,
   46 F. Supp. 3d 365 (S.D.N.Y. 2014) ........................................................... 18

*FTC v. Meta Platforms, Inc.*,
   775 F. Supp. 3d 16 (D.D.C. 2024) ............................................................... 19

*Gamevice, Inc. v. Nintendo Co.*,
   2020 WL 13739193 (N.D. Cal. June 4, 2020) .............................................. 38

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ........................................................................................ 7

*Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale-Phase II LLC*,
   2020 WL 13573984 (D. Ariz. Feb. 12, 2020) .............................................. 25

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
   843 F.3d 958 (D.C. Cir. 2016) ................................................................... 5, 12

*Graves v. Mazda Motor Corp.*,
   405 F. App'x 296 (10th Cir. 2010) ................................................................. 9

*Hackett v. Procter & Gamble Co.*,
   2008 WL 4646049 (S.D. Cal. Oct. 17, 2008)........................................................ 39

*Hafstienn v. BMW of N. Am., LLC*,
   2005 WL 5988651 (S.D. Tex. Apr. 7, 2005)........................................................ 10

*Halcomb v. Washington Metro. Area Transit Auth.*,
   526 F. Supp. 2d 24 (D.D.C. 2007) ...................................................................... 17

*Hayden v. IBM, Corp.*,
   2025 WL 1697021 (S.D.N.Y. June 17, 2025) ..................................................... 21

*Hendrix v. Evenflo Co.*,
   255 F.R.D. 568 (N.D. Fla. 2009)......................................................................... 11

*High-Tech Emp. Antitrust Litig., In re*,
   2014 WL 1351040 (N.D. Cal. April 4, 2014) ..................................................... 23

*Hill v. Republic of Iraq*,
   328 F.3d 680 (D.C. Cir. 2003) ........................................................................... 32

*Hobus v. Howmedica Osteonics Corp.*,
   699 F. Supp. 3d 1122 (D. Or. 2023)................................................................... 10

*Ill. Tool Works Inc. v. Rust-Oleum Corp.*,
   2018 WL 5810327 (S.D. Tex. Jun 21, 2018) ..................................................... 27

*Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*,
   2024 WL 4534156 (D.D.C. July 16, 2024)................................................... 38, 39

*Jimenez v. Allstate Ins. Co.*,
   2019 WL 13088814 (C.D. Cal. May 13, 2019) ................................................. 29

*Jinn v. Sig Sauer, Inc.*,
   2023 WL 2919558 (S.D.N.Y. Apr. 12, 2023) .................................................... 11

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
   2021 WL 4810266 (S.D.N.Y. Sept. 30, 2021).................................................... 18

*Joy v. Bell Helicopter Textron, Inc.*,
   999 F.2d 549 (D.C. Cir. 1993) ........................................................................... 40

*Kaiser v. Monroe Clinic, Inc.*,
   2020 WL 4364179 (W.D. Wis. July 30, 2020) .................................................. 10

*Kirk v. Schaeffler Grp. USA, Inc.*,
   2015 WL 9413147 (W.D. Mo. Dec. 22, 2015) .................................................. 43

*Larson v. Tyson Fresh Meats, Inc.*,
　2007 WL 162780 (D. Neb. Jan. 18, 2007) ....................................................... 42, 43

*LG Elecs. v. Whirlpool Corp.*,
　2010 WL 3613814 (N.D. Ill. Sept. 3, 2010)............................................................ 39

*LIBOR-Based Fin. Inst. Antitrust Litig., In re*,
　2025 WL 2733020 (S.D.N.Y. Sept. 25, 2025)................................................... 15, 16

*Live Concert Antitrust Litig., In re*,
　863 F. Supp. 2d 966 (C.D. Cal. Mar. 2012) ........................................................... 39

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
　209 F. Supp. 3d 612 (S.D.N.Y. 2016) *aff'd*, 720 F. App'x 24 (2d Cir. 2017).......................... 37

*Lyman Good Dietary Supplements Litig., In re*,
　2019 WL 5682880 (S.D.N.Y. Oct. 31, 2019)........................................................... 20

*Malletier v. Dooney & Bourke, Inc.*,
　525 F. Supp. 2d 558 (S.D.N.Y. 2007) ................................................................... 27

*Matiella v. Murdock St. LLC*,
　2025 WL 2298614 (D.D.C. Aug. 8, 2025)................................................... 7, 11, 21

*Mirena IUD Prods. Liab. Litig., In re*,
　169 F. Supp. 3d 396 (S.D.N.Y. 2016) .............................................................. 10, 17

*Nat'l Soc'y of Pro. Eng'rs v. United States*,
　435 U.S. 679 (1978) ........................................................................................... 18, 19

*Nosal v. Granite Park LLC*,
　269 F.R.D. 284 (S.D.N.Y. 2010)............................................................................. 21

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,
　571 F. Supp. 3d 106 (S.D.N.Y. 2021) ................................................................... 37

*Parsi v. Daioleslam*,
　852 F. Supp. 2d 82 (D.D.C. 2012) ...................................................... 5, 12, 20, 35

*Patsy's Italian Rest., Inc. v. Banas*,
　531 F. Supp. 2d 483 (E.D.N.Y. 2008)...................................................................... 9

*Pella Corp. Architect & Designer Series Window Mktg.*,
　*Sales Prac. and Prods. Liab. Litig., In re*, 214 F. Supp. 3d 478 (D.S.C. 2016) ..................... 29

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
　32 F.4th 824 (9th Cir. 2022)................................................................................... 18

*Premium Plus Partners, L.P. v. Davis*,
   653 F. Supp. 2d 855 (N.D. Ill. 2009)............................................................................ 15

*Rail Freight Fuel Surcharge Antitrust Litig., In re*,
   292 F. Supp. 3d 14 (D.D.C. 2017) ............................................................................... 42

*R.F.M.A.S., Inc. v. So*,
   748 F. Supp. 2d 244 (S.D.N.Y. 2010) ......................................................................... 21

*Rekor Sys., Inc. v. Loughlin*,
   2022 WL 2063857 (S.D.N.Y. June 8, 2022)................................................................ 25

*Sacchetti v. Gallaudet Univ.*,
   344 F. Supp. 3d 233 (D.D.C. 2018) ...................................................................... 11, 28

*Saxon Glass Techs., Inc. v. Apple Inc.*,
   393 F. Supp. 3d 270 (W.D.N.Y. 2019), *aff'd*, 824 F. App'x 75 (2d Cir. 2020) ...................... 27

*Sears, Roebuck & Co. v. Menard, Inc.*,
   2003 WL 168642 (N.D. Ill. Jan. 24, 2003) ................................................................. 28

*Sherrod v. McHugh*,
   334 F. Supp. 3d 219 (D.D.C. 2018) ............................................................................ 42

*Snider-Jefferson v. Amigo Mobility Int'l, Inc.*,
   2016 WL 4424954 (E.D. Va. Aug. 17, 2016)............................................................. 25

*Sonic Corp. Customer Data Sec. Breach Litig., In re*,
   2021 WL 5916743 (N.D. Ohio Dec. 15, 2021) .......................................................... 28

*State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*,
   980 F. Supp. 2d 1031 (N.D. Ind. 2013) ...................................................................... 15

*Taylor v. Evans*,
   1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) ................................................................ 42

*Thurman v. Sedlak*,
   2024 WL 4443841 (E.D. Va. Aug. 14, 2024) ............................................................ 12

*Tri Cnty. Indus., Inc. v. District of Columbia*,
   200 F.3d 836 (D.C. Cir. 2000) .................................................................................... 32

*United States ex rel. Landis v. Tailwind Sports Corp.*,
   2017 WL 5905509 (D.D.C. Nov. 28, 2017) ............................................................... 13

*United States ex rel. Morsell v. NortonLifeLock, Inc.*,
   2022 WL 278773 (D.D.C. Jan. 31, 2022).................................................................... 25

*United States v. DynCorp Int'l LLC*,
  715 F. Supp. 3d 45 (D.D.C. 2024) ...................................................................... 15

*\*United States v. Libby*,
  461 F. Supp. 2d 3 (D.D.C. 2006) ............................................................ 5, 13, 27

*United States v. Second Chance Body Armor, Inc.*,
  289 F. Supp. 3d 145 (D.D.C. 2018) ............................................................ 12, 42

*United States v. Sutton*,
  642 F. Supp. 3d 57 (D.D.C. 2022) ...................................................................... 43

*Vista Food Exch., Inc. v. Vistar Corp.*,
  2005 WL 2371958 (E.D.N.Y. Sept. 27, 2005) .................................................... 28

*Wells Fargo Bank, N.A. v. United States Life Ins. Co. in City of N.Y.*,
  2025 WL 2220948 (S.D.N.Y. Aug. 4, 2025) ...................................................... 13

*Wilkerson v. Boston Sci. Corp.*,
  2015 WL 2087048 (S.D. W. Va. May 5, 2015) .................................................. 28

*World of Sleep, Inc. v. La-Z-Boy Chair Co.*,
  756 F.2d 1467 (10th Cir. 1985) .......................................................................... 32

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
  2010 WL 11505684 (C.D. Cal. Jan. 25, 2010)*, aff'd in part*,
  526 F. App'x 761 (9th Cir. 2013) ....................................................................... 39

*Yeti Coolers, LLC v. RTIC Coolers, LLC*,
  2017 WL 404553 (W.D. Tex. Jan. 27, 2017) ........................................................ 9

## RULES

Fed. R. Civ. P. 26(a)(2)(D)(ii) ............................................................................. 23

*Fed. R. Evid. 403 ............................................................................ 1, 5, 27, 30, 35

*Fed. R. Evid. 702 .......................................................... 1, 5, 8, 11, 12, 22, 27, 30, 35,38

## OTHER AUTHORITIES

Crissy Joshua, *A Guide to APKPure: Is It Legal and Is It Safe?*, Avast (Sept. 22, 2023),
  https://www.avast.com/c-is-apkpure-safe ............................................................ 9

Pursuant to Federal Rule of Evidence 702, Plaintiff Fotobom Media, Inc. respectfully moves to exclude certain opinions of Defendant Google LLC's experts, as set forth below.

## INTRODUCTION

The Court should exclude certain opinions offered by Google's three experts that fail to satisfy the requirements of Federal Rules of Evidence 702 and 403.

*First*, the Court should exclude in their entirety the opinions of Google's human-computer interaction expert, Dr. Jacob Wobbrock. Dr. Wobbrock's opening report opines on the user experience of Fotobom's keyboard app, "Keyboard+," Google's keyboard app, "Gboard," and the Apple iOS keyboard. He also offers sweeping conclusions about how users' experience with these keyboards might affect their perceptions of the Android brand and purchasing decisions. But none of these opinions are based on what *users* actually think about the products. They are simply Dr. Wobbrock's musings, based on a handful of documents and deposition excerpts and his personal experience with non-representative versions of the apps. Worse still, Dr. Wobbrock never explains the principles he purported to apply in his analysis because doing so would have been "tedious." Rule 702 requires more from an expert. Dr. Wobbrock's "rebuttal" opinions fare no better. Not only are they far outside the scope of permissible rebuttal testimony, but they also suffer from glaring methodological errors that Dr. Wobbrock admitted he would not employ in his academic work.

*Second*, certain opinions offered by Mr. Sean Kruskol, Google's damages rebuttal expert, should be excluded. Mr. Kruskol attempts to raise an antitrust plaintiff's burden of proof by requiring Fotobom—after liability and fact of damage have been established—to reduce its damages to account for the possibility that events in the but-for world might not have occurred. Based on this faulty principle, Mr. Kruskol applies a "probability adjustment" to various categories of revenue that Fotobom's damages expert calculated it would have earned in a but-

for world.  Yet because he could not himself determine the likelihood of certain facts relating to Fotobom's projected distribution with "a 100 percent guarantee," he eliminated categories of projected damages altogether.  Not only does Mr. Kruskol's opinion undermine the Sherman Act's framework, but he also failed to apply his opinion in a reliable manner to the facts of the case.  Separately, Mr. Kruskol performs other various adjustments "for illustrative purposes only" that further reduce Fotobom's damages.  But he admitted that he applied no methodology in determining which adjustments to make and that his adjustments are hypothetical, because he has no understanding of the but-for world in this case and takes no position on the merits of the adjustments he made.  He also presents his illustrative adjustments cumulatively, meaning there is no way to carve out his faulty "probability adjustments."  The Court should exclude these opinions as unfairly prejudicial and unreliable.

*Third*, the Court should exclude certain opinions offered by Google's economist, Dr. Kostis Hatzitaskos.  Dr. Hatzitaskos offers several opinions about the quality, value, and user experience of Keyboard+ that extend beyond his expertise in economics.  Also, because he lacks specialized knowledge in the relevant fields, these opinions are based entirely on his review of documents and deposition testimony, which is neither a reliable methodology nor helpful to the jury.  Dr. Hatzitaskos also offers certain opinions within the bounds of his expertise but that attempt to relitigate issues courts (including this Court) have already conclusively decided against Google, as explained in Fotobom's concurrent motion for partial summary judgment. The Court should exclude these opinions as well.

## BACKGROUND

Fotobom is a California-based developer of an Android keyboard app called Keyboard+. *See* Ex. A, Expert Rep. of M. DeMario (Jun. 9, 2025) ("DeMario Rep.") ¶¶ 8-10; Ex. B, Expert Rep. of E. Forister, Ph.D. (Jun. 9, 2025) ("Forister Rep.") ¶¶ 17-18.  Keyboard+ offers all the

traditional features of a keyboard app. *See* DeMario Rep. ¶ 10; Forister Rep. ¶ 20. It can also direct users to a search engine through a button in the keyboard. *See* DeMario Rep. ¶ 10; Forister Rep. ¶ 21. On top of these features, Fotobom's software provides users unique suggestions of relevant content (such as GIFs), websites, and apps, based on keywords typed by the user and other contextual information. *See* DeMario Rep. ¶ 10; Forister Rep. ¶ 20. A former Verizon employee testified that, when Fotobom first began developing its app, this software was highly innovative. *See* Ex. C, Dep. Tr. of J. Kupsh (Mar. 6, 2025) at 118:10-18.

The most effective way for keyboard developers like Fotobom to distribute their product is to reach deals with OEMs or carriers to "preload" the keyboard as the default on mobile devices. *See* Forister Rep. ¶¶ 130-147. Fotobom's business strategy thus centered on obtaining these preloading agreements and it cultivated distribution partnerships with two significant wireless carriers—Verizon and América Móvil. *See* DeMario Rep. ¶¶ 13-33; Forister Rep. ¶¶ 23-24. Keyboard+ presented a variety of ways for Fotobom and its partners to generate revenue, including through driving app downloads, app engagement, impressions, and click-throughs to websites, other apps, products, and services. *See* DeMario Rep. ¶ 11. The revenue potential for a keyboard is significant because it appears in any mobile app that allows a user to enter text. *See id.* ¶ 10. For instance, Keyboard+ could provide its own context-dependent content suggestions in the keyboard app alongside a user's search queries in a browser app. *Id.*

By May 2018, Verizon had integrated Fotobom's software on all its 70 million Android devices preloaded with Message+—Verizon's messenger app. *See* DeMario Rep. ¶ 15. Building on the success demonstrated by Fotobom's integration within Message+, the parties anticipated that subsequent phases of their partnership would involve preloading Keyboard+ as the default keyboard on Verizon's Android devices. *See* DeMario Rep. ¶ 63; Ex. D, Expert Reply Rep. of

M. DeMario (Sept. 30, 2025) ("DeMario Reply Rep."), ¶ 24.  Fotobom was also in the advanced

stages of implementing a distribution agreement with América Móvil, one of the largest wireless

carriers in the world, to preload its keyboard as the default on millions of mobile devices.  *See*

DeMario Rep. ¶¶ 20-30.  But despite its initial success, Fotobom's distribution partnerships were

thwarted by an interlocking web of device certification requirements, licensing agreements, and

revenue share agreements that Google has used to tie up a substantial portion of the Android

keyboard market.  *See id.* ¶¶ 31-32.  For instance, Google threatened to "penalize[ ]" América

Móvil for purported violations of an "agreement" between Google and América Móvil that

required "preload[ing] [of] Google's keyboard."  Ex. E, FOTO_GOOG_0029149, at 149.

América Móvil then backed away from the partnership.

     Google's competing keyboard app is called Gboard.  Gboard has "long term strategic

value" to Google because it "[a]cts as a strategic defense for search."  Forister Rep. ¶ 758

(quoting GOOG-FOTOBOM-00018748, at 754).  Google views the keyboard as a search access

point, meaning if a device were preloaded with a keyboard that Google does not control it could

potentially direct users to other search engines, which "would not bring revenue to Google."  *Id.*

(quoting Dep. Tr. of K. Diamond (Feb. 27, 2025), at 89:11-15).  As Google's Vice President of

Android Partnerships, Jim Kolotouros, explained, "[t]he question is whether we can get Gboard

as the default.  Once that is there, I don't mind if [another] keyboard is present as just another

preload so long as it is set to Google and its promotion tactics are neutered."  *Id.* ¶ 143 (quoting

GOOG-FOTOBOM-00214507, at 509).

     When Gboard first launched, however, its users were "plagu[ed]" by "[p]erformance and

system health issues," and the app required "both help and protection."  *Id.* ¶ 491 (quoting

GOOG-FOTOBOM-00092235, at 242; GOOG-FOTOBOM-00298403, at 406).  Google

therefore began tying Gboard to its most popular apps on certain devices and requiring OEMs and carriers to set Gboard as the default keyboard if they wanted to maximize their revenue share under Google's revenue share agreements.  *See id.* ¶¶ 80-87.

Google's strategy has been effective.  As a result of it, 95% of Gboard's users "come from OEM pre-install[s]"—meaning that, as Google recognizes, "less than 5%" of its users actually download the app themselves.  *Id.* ¶¶ 493, 650 (quoting GOOG-FOTOBOM-00362524, at 524; GOOG-FOTOBOM-00005629, at 629).

## LEGAL STANDARD

Expert testimony is admissible under Rule 702 only if the trial court determines that: (*i*) the witness is qualified as an expert to testify on a particular matter, (*ii*) the opinion is based upon a reliable methodology, and (*iii*) the expert's testimony will "assist the trier of fact."  *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 85 (D.D.C. 2012).  For expert testimony to be reliable, it must be based upon sufficient facts or data and the product of reliable principles and methods, and the expert must have "applied the principles and methods reliably to the facts of the case."  *Id.* (quoting Fed. R. Evid. 702); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92, 597 (1993).  For expert testimony to be helpful, it must have "a valid . . . connection to [a] pertinent inquiry."  *Id*. at 591-92.  In addition, courts exclude expert testimony "where the jury is just as competent to consider and weigh the evidence as is [the] expert."  *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 973 (D.C. Cir. 2016) (citation omitted).

Expert testimony must also satisfy Rule 403: its probative value must not be substantially outweighed by unfair prejudice or juror confusion.  *See United States v. Libby*, 461 F. Supp. 2d 3, 7 (D.D.C. 2006).  Because "[e]xpert evidence can be both powerful and quite misleading," the "judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."  *Daubert*, 509 U.S. at 595 (citation omitted).

5

## ARGUMENT

I.    **The Court Should Exclude Dr. Jacob Wobbrock's Opinions In Their Entirety**

A.    **The Opinions in Dr. Wobbrock's Opening Report Are Not Supported by Any Reliable Methodology and Are Unhelpful to the Jury**

Dr. Wobbrock is an academic and researcher working in the fields of computer science and human-computer interaction.  *See* Ex. F, Expert Rep. of J. Wobbrock, Ph.D. (Jun. 9, 2025) ("Wobbrock Rep.") ¶ 2.  In his opening report, Dr. Wobbrock opines that "Keyboard+ has features that are inconsistent with a positive user experience," *id.* ¶ 33, and that "Gboard has features that are consistent with a positive user experience," *id.* ¶ 34.  He also opines that a "poor" keyboard experience on an Android device "can negatively color the user's perception of the device or Android brand," *id.* ¶ 49, and switching default keyboards on an Android device "is easy for users to accomplish," *id.* ¶ 52.  Finally, in a single sentence at the end of his report, Dr. Wobbrock opines that "Apple's iOS keyboard is a high-quality keyboard," *id.* ¶ 74, and that a "low-quality default keyboard on an Android device . . . may cause a user to consider an iOS device instead of Android device the next time they make a mobile device purchase decision," *id.* ¶ 78.  The Court should exclude each opinion.

To start, none of Dr. Wobbrock's opinions are based on a reliable methodology.  His opinions do not rest on empirical testing or a structured evaluation, but rather his own *ipse dixit* from reviewing non-representative versions of the products at issue and a handful of documents and deposition excerpts selected for him by counsel.  Ex. G, Dep. Tr. of J. Wobbrock (Sept. 10, 2025) ("Wobbrock Tr.") at 29:8-11, 142:21.  While an expert can be qualified by specialized knowledge, Dr. Wobbrock made no effort to describe the principles he applied or how those principles support his conclusions because he believed doing so would be "tedious."  *Id.* at 57:11-12.  Even setting aside the methodological flaws, Dr. Wobbrock's opinions are also

unhelpful to a jury.  Jurors are capable of drawing their own conclusions about how they perceive keyboard apps and operating software brands based on the record evidence.  Dr. Wobbrock's opinions about the iOS keyboard are unhelpful for the additional reason that competition between Android and Apple is irrelevant.

          **1.     Dr. Wobbrock's Opinions About How Consumers Would Have Perceived Keyboard+ Are Unreliable and Unhelpful**

        **i.**       Dr. Wobbrock purports to "assess the user experience implications of [] Keyboard+," Wobbrock Rep. ¶ 28, and opines that it "has features that are inconsistent with a positive user experience for mobile keyboard apps," *id*. ¶ 33; *id.* ¶¶ 54-65.  His conclusions rest on his own use of a pirated version of Keyboard+ that he downloaded from a third-party website, *id.* ¶¶ 54-55, and his review of *three* documents and a handful of deposition excerpts, *id.* ¶¶ 54-65.  Without any user testing or principled analysis, Dr. Wobbrock draws broad conclusions about how consumers would have perceived Keyboard+, including that its "'suggestions' feature would distract users," *id.* ¶ 63, and "that the user would conflate the negative user experience from the Keyboard+ product with the device as a whole, leading the user to be disappointed with any Android device on which it was installed," *id.* ¶ 65.  The Court should exclude these opinions as *ipse dixit*, because they are not based on reliable data or methods and Dr. Wobbrock made no attempt to explain how his experience supports these conclusions.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that a court should not admit opinion evidence "connected to existing data only by the *ipse dixit* of the expert"); *Matiella v. Murdock St. LLC*, 2025 WL 2298614, at *10 (D.D.C. Aug. 8, 2025) (cleaned up) ("[C]onclusory assertions based on experience do not establish reliability because they do not explain how the expert's experience leads to the conclusions reached, why that experience is a sufficient basis for the opinions, and how that experience is reliably applied to the facts.") (citation omitted).

There are reliable ways to measure consumer beliefs, such as well-designed surveys, focus groups, interviews, or certain statistical analyses.  In the human-computer interaction field, evaluations of consumer perceptions should be "structured," "principled," and use "validated criteria."  Ex. H, Expert Rebuttal Rep. of P. Parsons (Aug. 6, 2025) ("Parsons Rebuttal Rep.") ¶¶ 21-22.  Methods employed by experts in the field include "heuristic evaluation, where experts assess the interface against established usability principles; cognitive walkthroughs, which simulate step-by-step task execution to identify potential user difficulties; and usability testing, in which representative users perform realistic tasks while observers collect behavioral and attitudinal data."  *Id.* ¶ 24.  Other methods "include surveys and questionnaires to capture user satisfaction, interviews and focus groups for deeper qualitative insight, diary and log entries for collecting user perceptions over time, and analytics or telemetry data to observe usage patterns at scale."  *Id.*  Experts typically use these methods "in combination to provide a more complete and reliable understanding of the user experience."  *Id.*

Dr. Wobbrock did not apply any of these methods, much less multiple, to assess how users would have perceived Keyboard+ and the practical implications of any consumer perceptions.  His conclusions regarding the user experience of Keyboard+ are "based solely on an informal review of the interface, absent any empirical testing, systematic analysis, or engagement with representative users."  *Id.* ¶ 26.  That warrants exclusion under Rule 702 because Courts require expert opinions about consumer perceptions to be based on reliable facts or data and methods, not just an expert's say-so.  *See, e.g., Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, 636 F. Supp. 3d 144, 151 (D.D.C. 2022) (excluding opinions about what a "market participant" would do based solely on expert's experience because it was not "supported by reliable methodology"); *ChromaDex, Inc. v. Elysium Health, Inc.*, 2020 WL 1279236, at *8

(C.D. Cal. Jan. 16, 2020) (rejecting expert's opinion that "present[ed] no reliable business principle or method to suggest . . . how consumers would have gone about their purchasing decisions . . . and instead applie[d] [only] his purported knowledge and experience).[1]

Dr. Wobbrock's personal views based on his use of Keyboard+ are particularly unreliable because he used an unverified and non-representative version of Keyboard+. Dr. Wobbrock downloaded a version of Keyboard+ from a website called APKPure. *See* Wobbrock Rep. ¶ 55 & n.30. But Fotobom did not upload Keyboard+ to APKPure, nor did it authorize anyone to do so. *See* Parsons Rebuttal Rep. ¶ 30. APKPure allows "anyone [to] upload APKs," meaning applications on the site "might be fake apps that install viruses or other malicious software on your phone." *Id.* (quoting Crissy Joshua, *A Guide to APKPure: Is It Legal and Is It Safe?*, Avast (Sept. 22, 2023), https://www.avast.com/c-is-apkpure-safe).

Dr. Wobbrock is aware of these risks. In fact, he did not download the version of Gboard used in his evaluation of that product from APKPure because it was "available elsewhere in a more trustworthy place." Wobbrock Tr. 119:12-13. Nor did Dr. Wobbrock make any attempt to verify the accuracy of the version of Keyboard+ used in his analysis. *Id.* at 101:18-21. He did not even download the most current version of the app, which would have included a range of improvements to the user interface, or a version that incorporated Keyboard+'s content

---

[1] *See also Yeti Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 404553, at *2 (W.D. Tex. Jan. 27, 2017) (holding that where the relevant issue is "the *perception* of consumers," "[t]he only way to gauge this is by gathering information from the general consuming public in a scientific way that allows one to make reasonable conclusions regarding consumers' thoughts about a product" and experience "is not a substitute for empirical data"); *Patsy's Italian Rest., Inc. v. Banas*, 531 F. Supp. 2d 483, 485-86 (E.D.N.Y. 2008) (reliance on "personal knowledge and expertise" rather than surveys or other empirical methods in opining on consumers' beliefs rendered methodology unreliable); *Graves v. Mazda Motor Corp.*, 405 F. App'x 296, 299 (10th Cir. 2010) (affirming exclusion of expert who relied "on no more than his [own] say so" to opine on how an "ordinary consumer would expect" a car part to operate).

suggestions.  *See* Parsons Rebuttal Rep. ¶ 32.  "Comparing an outdated version of the keyboard to current alternatives departs from established evaluation practices and does not meet the methodological standards typically upheld in expert UX assessment."  *Id.*  Dr. Wobbrock's failure to test a representative version of Keyboard+ further renders his opinions unreliable.  *E.g.*, *Hobus v. Howmedica Osteonics Corp.*, 699 F. Supp. 3d 1122, 1138 (D. Or. 2023) (excluding opinions where expert relied on unrepresentative evaluations and "conducted no testing" on the actual device at issue); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 454-55 (S.D.N.Y. 2016) (excluding opinion based on unexplained comparison to other product as "merely speculation" because use of "a different product with different specification . . . does not tell us anything" about the product at issue); *Hafstienn v. BMW of N. Am., LLC*, 2005 WL 5988651, at *7 (S.D. Tex. Apr. 7, 2005) (excluding opinions about road conditions at accident site where expert "did not perform testing on the actual roadway").

Dr. Wobbrock acknowledged as much in his deposition.  He conceded that he could not support his opinion that users would be distracted by the suggestions feature because Keyboard+ is no longer functional[2] and asking users for their views on a feature by showing them a video demonstration "produces unreliable data."  Wobbrock Tr. 86:12-87:2.  That is exactly why his opinion must be excluded.  That Fotobom's suggestions feature could not be accurately tested because the anticompetitive conduct at issue forced Fotobom out of business is not justification for an unreliable methodology.  *E.g.*, *Kaiser v. Monroe Clinic, Inc.*, 2020 WL 4364179, at *6 (W.D. Wis. July 30, 2020) (excluding "inherently speculative" opinions about what "never

---

[2] Keyboard+ is a server-based application, but Fotobom no longer maintains access to the server that supported the application.  Parsons Rebuttal Rep. ¶ 31.  Thus, the features that made Keyboard+ unique—including suggested actions and content and menu buttons allowing other applications and websites to be opened from the keyboard—are no longer operational.  *Id.*

administered" tests on unavailable evidence might have shown where defendant did not contend plaintiff interfered with defendant's "attempts to conduct their own examination").[3]

**ii.** Dr. Wobbrock's repeated references to his experience in the field during his deposition do not save his unreliable opinions. *E.g.*, Wobbrock Tr. 98:15-19, 143:22-144:7, 154:17-20. Reviewing three documents and a handful of deposition transcripts is not a reliable foundation for an expert's opinion regardless of how much experience in the industry they have. In any event, that Rule 702 permits an expert to rely on experience "does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion" the expert offers. *Matiella*, 2025 WL 2298614, at *8. When an expert "does not identify *any* specific method that he used to formulate his opinion[ ]" and instead draws "solely or primarily" on his experience, he must explain "how that experience is reliably applied to the facts." *Sacchetti v. Gallaudet Univ.*, 344 F. Supp. 3d 233, 248-49 (D.D.C. 2018).

Dr. Wobbrock failed to perform this necessary step. For instance, his report does not disclose what principles he used in testing Keyboard+ or reviewing the few documents he did, or explain how he applied HCI principles to his evaluation. As Dr. Wobbrock admitted in his deposition, it contains only "the results" of his "inspection." Wobbrock Tr. 94:5-6; *see also id*. at 53:11 (admitting that he "doesn't disclose a list of criteria" used to evaluate Keyboard+); *id.* at 95:21-96:2 (admitting that his report does not set forth the steps of his evaluation). That is insufficient to satisfy Rule 702's criteria.

---

[3] *See also Jinn v. Sig Sauer, Inc.*, 2023 WL 2919558, at *11 (S.D.N.Y. Apr. 12, 2023) (expert's claim that it was "virtually impossible" to perform tests supporting opinions "demonstrates that his opinions have no reliable foundation"); *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 590 (N.D. Fla. 2009) (excluding as "purely speculative" opinions proponent argued "would be impossible to test"); *Alfred v. Mentor Corp.*, 479 F. Supp. 2d 670, 672-73 (W.D. Ky. 2007) (finding expert's admission that "tests would be impossible" renders opinions unreliable).

Dr. Wobbrock testified that he did not articulate the principles he used in evaluating Keyboard+ because he "know[s] the principles" as he has "been doing this for three decades." *Id.* at 55:2-4. But even if Dr. Wobbrock finds explaining the principles and methodology he purportedly applied to be "tedious," *id.* at 57:11-12, Rule 702 requires him to do so. Dr. Wobbrock simply "move[s] from A to C without explaining the link[s] in his logic." *Evans v. Aramark Sports & Ent. Servs., LLC*, 2022 WL 19520781, at *14 (D.D.C. Nov. 22, 2022) (excluding qualified expert for failure to "walk step-by-step through his analysis" because it "suggest[s] he may have jumped 'too great an analytical gap'") (citation omitted). And his failure to "identify specific and objective" standards he applied in his evaluation, and explain how he applied them, suggests his conclusions were "driven less by objective sources and more by his personal views." *Parsi*, 852 F. Supp. 2d at 89-90 (excluding opinions where expert testified "it would be 'pointless'" to identify specific standards applied to analysis because "doing so would hardly have been 'pointless'"—it "was [the expert's] job").[4]

**iii.**    Even if the Court could overlook the methodological flaws of Dr. Wobbrock's opinion (and it should not), its unhelpfulness to the jury is an independent basis for exclusion. Dr. Wobbrock's unexplained review of cherry-picked documents in the record and fact witness testimony is not beyond the comprehension of the average juror. *See Gilmore*, 843 F.3d at 973. "The jury is competent to read and interpret the evidence without Dr. [Wobbrock's] proffered opinions." *United States v. Second Chance Body Armor, Inc.*, 289 F. Supp. 3d 145, 155 (D.D.C. 2018) (rejecting as unhelpful expert's "bald assertions based on the documentary record");

---

[4] *See also EEOC v. Bloomberg L.P.*, 2010 WL 3466370, at *15 (S.D.N.Y. Aug. 31, 2010) (rejecting opinions supported by expert's "'because I said so' explanation" rather than the "more systematic approach" used in the field); *Thurman v. Sedlak*, 2024 WL 4443841, at *5 (E.D. Va. Aug. 14, 2024) ("[Expert's] failure to show his work renders his opinion speculative, unreliable, and effectively *ipse dixit*") (citations omitted).

*Libby*, 461 F. Supp. 2d at 12-13 (expert testimony not helpful when expert's opinions relate to issues "the average juror is personally faced with . . . in their daily lives").

Dr. Wobbrock contends that, while he is capable of viewing a video demonstration of the Keyboard+ features and concluding they would be distracting to device users, users themselves are not. Wobbrock Tr. 86:18-22. But jurors, daily users of mobile applications, are "equally qualified to review the same video . . . and make their own factual findings" about whether they would find the feature distracting. *Davenport v. Safeway, Inc.*, 2022 WL 4379016, at *6 (D.D.C. Sept. 22, 2022) (excluding opinions where "the scientific methods that purportedly undergird [the expert's] conclusions amount simply to 'review[ing] the . . . video frame by frame' "); *see also Wells Fargo Bank, N.A. v. United States Life Ins. Co. in City of N.Y.*, 2025 WL 2220948, at *22 (S.D.N.Y. Aug. 4, 2025) ("[I]f the expert's opinion is one that the jury could reach with their own 'common knowledge and common sense,' no expert testimony is warranted.").

Likewise, Dr. Wobbrock's opinion that "Fotobom made no effort to ensure Keyboard+ was a state-of-the-art keyboard for users" and that it "lacked anything other than" certain basic keyboard functionality, Wobbrock Rep. ¶ 64, is an improper expert opinion that would not aid the trier of fact. Dr. Wobbrock supports his conclusion with only deposition testimony which— to the extent it is even relevant[5]—the trier of fact is equally capable of understanding. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 2017 WL 5905509, at *14 (D.D.C. Nov. 28, 2017) (excluding opinions citing "almost exclusively" to deposition testimony).

---

[5] For the proposition that Fotobom only had basic keyboard functionality, Wobbrock inexplicably cites to the deposition of a Google fact witness who was not even discussing Keyboard+. *See id.* ¶ 64 n.58. The only other support Dr. Wobbrock provides is an out-of-context quote from the deposition of Perry LaForge.

### 2.    Dr. Wobbrock's Opinions About How Consumers Would Have Perceived Gboard Are Unreliable and Unhelpful

i.    Dr. Wobbrock's opinions about Gboard should be excluded for similar reasons. He opines that Gboard has features that are consistent with a positive user experience, Wobbrock Rep. ¶¶ 66-73, and broadly concludes that "[i]f Gboard was the only keyboard product that a user was exposed to on an Android mobile device, it is likely that the user would attribute their positive experience of Gboard to the Android device on which it was installed," *id.* ¶ 72.  Again, Dr. Wobbrock's opinions are based on his own assessment of the app and selected documents and deposition cites provided to him by counsel.  *Id*. ¶¶ 66-72.  He conducted no structured analysis or testing to support his speculation about how consumers would have perceived Gboard and what they would have attributed their experience to.  *See supra* pp. 7-9.  He also failed to explain any principles he used to perform his analysis or how those principles applied to the facts and data he considered.  *See supra* pp. 11-12; Wobbrock Tr. 162:18-21, 163:10-13, 164:19-22, 170:20-171:16.  His opinions are unreliable, "inadmissible *ipse dixit* in its most classic form." *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 302 (D.D.C. 2018).

Exemplifying the lack of methodological rigor (and fit) of Dr. Wobbrock's analysis, he bases his opinions on a recent version of Gboard.  But at the start of the relevant period, "Gboard lacked the fundamental technologies [Wobbrock] now highlight[s] as the foundation for a positive user experience."  Parsons Rep. ¶ 44.  For instance, while Dr. Wobbrock highlights "Gboard's language and spatial models," Wobbrock Rep. ¶ 69, Gboard's current director of engineering testified that advanced technologies such as large language models were not available on Gboard at the beginning of the relevant time frame.  Ex. I, Dep. Tr. of S. Zhai (Mar. 13, 2025), at 48:12-15, 51:12-16.  Similarly, Gboard's product manager testified that the models Gboard used "to power most of our experiences" had reliability issues that "led to a lot of issues

from latency" at the beginning of the relevant time frame.  Ex. J, Dep. Tr. of A. Ghosh (Mar. 18, 2025), at 83:2-10.

Compounding this problem, Dr. Wobbrock compares this recent version of Gboard to the outdated, non-operational version of Keyboard+.  His apples-to-oranges comparison is therefore not only methodologically unsound but also misleading and prejudicial.  The Court should exclude Dr. Wobbrock's opinions about the products at issue for this additional reason.  *See Premium Plus Partners, L.P. v. Davis*, 653 F. Supp. 2d 855, 867-68 (N.D. Ill. 2009) (excluding as unreliable opinions comparing behavior of "different securities during different time periods" without "explanation" for why they should be considered comparable); *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, 980 F. Supp. 2d 1031, 1049 (N.D. Ind. 2013) (excluding opinion where expert failed to ensure "comparison is one between apples and apples rather than one between apples and oranges") (citation omitted).

**ii.**    Dr. Wobbrock's opinions about the Gboard user experience are also unhelpful to the jury.  Lacking any expert analysis, his selective recitation of record evidence—touting Gboard's "state-of-the-art" features and Google's "substantial historic (and continuing) efforts to improve Gboard" (Wobbrock Rep. ¶ 71)—reads more like promotional material than an objective expert assessment.  The trier of fact is "just as competent as [Dr. Wobbrock] to read the emails and presentations" and make determinations about the facts at issue in this case.  *United States v. DynCorp Int'l LLC*, 715 F. Supp. 3d 45, 64 (D.D.C. 2024) (excluding opinions where "emails and presentation[s] are the primary basis" of opinions because "[t]he jury does not need any particular expertise to adequately consider" such documents).  Google cannot use Dr. Wobbrock simply to "construct[ ] a factual narrative based upon record evidence" that can be "readily understood by any lay person without assistance."  *In re LIBOR-Based Fin. Inst.*

*Antitrust Litig.*, 2025 WL 2733020, at *24 (S.D.N.Y. Sept. 25, 2025) (rejecting expert opinions "merely recit[ing] cherry-picked individual communications from the record") (citation omitted).

iii.    Separately, in this section of his report, Dr. Wobbrock also states in one sentence that "Samsung's proprietary keyboard also provides users with a quality keyboard experience." Wobbrock Op. Rep. ¶ 73.  There is no analysis or explanation for this opinion.  To the extent Dr. Wobbrock intends to offer testimony about Samsung's keyboard, this single line in his opening report with no citation or analysis does not preserve such an opinion.  *E.g.*, *Cohlima v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 432 (N.D. Okla. 2008) (excluding expert reports with no explanation of the "how and why" experts reached their opinions because "[m]ere conclusory opinions are not sufficient to meet the requirements of Rule 26").

### 3.    Dr. Wobbrock's Opinions About the iOS Keyboard Are Unreliable and Unhelpful

In a handful of paragraphs at the end of his opening report, Dr. Wobbrock opines that "Apple's iOS keyboard is a high-quality keyboard."  Wobbrock Rep. ¶¶ 74-77.  From there, he opines "that a low-quality default keyboard on an Android device (especially a low-quality out-of-the-box default keyboard) may cause a user to consider an iOS device instead of an Android device the next time they make a mobile device purchase decision."  *Id.* ¶ 78.  The Court should exclude these opinions as well.

i.    Much like his opinions about Keyboard+ and Gboard, Dr. Wobbrock's opinions about Apple's keyboard are pure *ipse dixit*.  He admitted in his deposition that his opinion about the quality of the iOS keyboard is based on his "own personal experience" as an iPhone user—experience he acknowledged "is secondary to more formal" methods he did not use to reach his conclusion.  Wobbrock Tr. 172:19-173:22.  But "Rule 702 . . . precludes [Dr. Wobbrock] from offering opinion testimony based on personal opinions rather than on relevant objective

standards." *Halcomb v. Washington Metro. Area Transit Auth.*, 526 F. Supp. 2d 24, 30 (D.D.C. 2007).  Likewise, Dr. Wobbrock's opinion that a low-quality default keyboard experience on an Android device may cause users to switch to iOS is completely unsupported and is not the product of any expert methodology.  He cites *no* evidence to support his conclusory assertion, nor does he offer any expert analysis or evaluation.  Dr. Wobbrock cannot opine on causation by "reverse-engineering a theory to fit the desired outcome." *Mirena*, 169 F. Supp. 3d at 430.

Dr. Wobbrock also mischaracterizes and fails to offer any analysis of the few documents he cites, confirming why the jury should never hear his *ipse dixit*. *See In re Acetaminophen-ASD-ADHD Prods. Liab. Litig.*, 2024 WL 3357608, at *23 (S.D.N.Y. July 10, 2024) (opinion which "misrepresents" documents relied upon "does not pass muster under Rule 702").  For instance, Wobbrock cites two Google documents comparing the typing metrics of Gboard and the iOS keyboard and, while providing no expert analysis, notes that he "agree[s] with their conclusions that the iOS keyboard provides a high-quality user experience."  Wobbrock Rep. ¶ 76 (citing GOOG-FOTOBOM-00014201; GOOG-FOTOBOM-00013438).  However, it is unclear what Dr. Wobbrock agrees with.  Neither document says anything about the quality of the iOS keyboard or reaches the conclusion Dr. Wobbrock claims.

More problematic, Dr. Wobbrock asserts that "Google documents confirm" his concern that "a low-quality out-of-the-box default keyboard" might cause users to purchase an iOS device instead of Android, but they do not. *Id.* ¶¶ 78-79.  He cites two Google documents with altered quotations in parentheticals.  The first quote states "the keyboard seems to be one of the most visible pain points when switching [between Android and iOS devices]."  Wobbrock Rep. ¶ 79 n.88.  The second quote says, "Coming from an iPhone, users may run into problems they never had before.  For example, [a] slower keyboard." *Id.*  However, Dr. Wobbrock's

manipulated quotations obscure that both of these documents are actually discussing the

dissatisfaction iOS users experience when they attempt to switch to Google devices preloaded

with Gboard.  *See* Ex. K, GOOG-FOTOBOM-00217565, at 566; Ex. L, GOOG-FOTOBOM-

00231713, at 717, 734.  When asked at his deposition why he omitted this context, Dr.

Wobbrock answered that he did not need to include it because he was making a "general point"

that "the keyboard causes an impression."  Wobbrock Tr. 189:20-22.  This hollow explanation

confirms Dr. Wobbrock's opinions "were set prior to his review of the documents" and to the

extent he employs any methodology, it "was aimed at achieving one result."  *Faulkner v. Arista

Records LLC*, 46 F. Supp. 3d 365, 381 (S.D.N.Y. 2014) (holding that expert's "disregard" of

relevant information "to arrive at a desired conclusion highlights the unreliability" of opinions).

      **ii.**      Not only are Dr. Wobbrock's opinions unreliable, they also are unhelpful and

irrelevant.  As explained above, the jury does not need Dr. Wobbrock to explain for them the one

news article and a handful of documents he cites in this section of the report without any

application of expert analysis.  *See, e.g.*, *Joint Stock Co. Channel One Russia Worldwide v.

Infomir LLC*, 2021 WL 4810266, at *21 (S.D.N.Y. Sept. 30, 2021) (excluding opinions

describing "articles" and "blog posts" as consistent with expert's understanding because

"expert's job is to present" his own view, "not marshal the views of others").

      Additionally, to the extent Google intends to offer Dr. Wobbrock's opinions about the

iOS keyboard as a procompetitive justification for its anticompetitive conduct, his opinions are

legally irrelevant.  Attempting to "justify[] a restraint on competition based on an assumption it

will improve a product's quality"—here, the quality of Android devices—"is nothing less than a

frontal assault on the basic policy of the Sherman Act."  *PLS.Com, LLC v. Nat'l Ass'n of

Realtors*, 32 F.4th 824, 836 (9th Cir. 2022) (quoting *Nat'l Soc'y of Pro. Eng'rs v. United States*,

435 U.S. 679, 695 (1978)).  That is why this Court rejected Google's "competition for the contract defense" in the *Search Case*.  Even if that were not so, Google's purported justification would require the Court to accept that Google's anticompetitive conduct in the relevant markets was justified by the benefits to competition in an entirely different market—the market for mobile operating systems.  However, the "weight of authority" is "broadly against recognizing out-of-market procompetitive justifications without very good justification."  *FTC v. Meta Platforms, Inc.*, 775 F. Supp. 3d 16, 69 (D.D.C. 2024).  That is exactly why this Court rejected Google's argument that competition with Apple justified the same anticompetitive agreements that foreclosed Fotobom from the market (the MADAs and RSAs) in the *Search Case*, as explained in Fotobom's concurrent motion for partial summary judgment.  Following this precedent, Dr. Wobbrock's opinions about the iOS keyboard have no relevance to this case, cannot help the trier of fact, and should be excluded.  *See*, *e.g.*, *In re Elec. Books Antitrust Litig.*, 2014 WL 1282298, at *13 (S.D.N.Y. Mar. 28, 2014) (holding "irrelevant and misleading" opinions "cannot aid the trier of fact . . . and must be excluded").

### 4.     Dr. Wobbrock's Opinions Regarding the Importance of Keyboards to the User Experience and Ease of Switching Should Be Excluded

Dr. Wobbrock's remaining opinions concerning consumer perceptions of keyboards more generally and the supposed ease of switching defaults suffer from the same methodological flaws and warrant exclusion for the same reasons.

Dr. Wobbrock offers a variety of opinions about the importance of keyboards to the user experience.  For instance, he opines that the "predictability" of touch keyboards is "important for user confidence and adoption," Wobbrock Rep. ¶ 39; "[a] poorly designed or implemented mobile keyboard can be a significant source of user frustration and a detriment to the overall user experience with a mobile device," *id.* ¶ 47; "[i]f text input is too cumbersome, users may

abandon tasks or seek alternative devices/applications," *id.* ¶ 48; and "a poor [user] experience can negatively color the user's perception of the device or Android brand." *Id.* ¶ 49. However, again, he did not employ any methodology to reach these conclusions, nor did he explain how his expertise supports these opinions. *See supra* pp. 7-9, 11-12. His overarching opinions about the impact of a negative keyboard experience (Wobbrock Rep. ¶¶ 48-50) lack any substantiation whatsoever—again suggesting they are "driven less by objective sources and more by [Dr. Wobbrock's] personal views." *Parsi*, 852 F. Supp. 2d at 90 (excluding expert that did not "explain the source" of standards applied to reach his conclusions).

Dr. Wobbrock's conclusions regarding the ease of switching default keyboards are likewise unreliable.[6] He opines that if users are "unsatisfied with the out-of-the-box default" keyboard on their Android device, the process of switching keyboards is "easy" and "there is no obstacle that would prevent any Android user from changing the default keyboard app." Wobbrock Rep. ¶ 52. Dr. Wobbrock provides "no explanation of the bases" for this conclusion; his report lacks any reference to "data, information, or [a] methodology used to formulate the opinions." *In re Lyman Good Dietary Supplements Litig.*, 2019 WL 5682880, at *6 (S.D.N.Y. Oct. 31, 2019). When pressed at his deposition for the bases of this opinion, Dr. Wobbrock referenced some usability principles that experts in the field might apply when evaluating ease of use, but admitted his report does not discuss these principles, stating that his report is "not teaching you or anyone else the principles of user interface evaluation." Wobbrock Tr. 132:13-19. He did not conduct any independent evaluation of users to determine whether any find it

---

[6] Fotobom's motion for partial summary judgment seeks issue preclusion on the importance of defaults based on this Court's detailed factual findings in the *Search Case*. Should the Court grant that motion and preclude Google from relitigating the importance of defaults, Dr. Wobbrock's opinion should be excluded for this reason as well. *See infra* pp. 42-43.

easy to switch default keyboards, nor does his report cite any work of other experts studying the issue. *See id.* at 135:6-14. Expert opinion based solely on the expert's experience is inadmissible when the expert does not explain how that "experience leads to the conclusion[s] reached, why that experience is a sufficient basis for the opinion[s], and how that experience is reliably applied to the facts." *Matiella*, 2025 WL 2298614, at *10.[7]

Finally, Dr. Wobbrock's opinions concerning the importance of keyboards to user experience and the ease of switching should be excluded for their unhelpfulness. For instance, Dr. Wobbrock simply lists the steps required to change a default keyboard and concludes that the process of switching keyboards is easy. The trier of fact is equally capable of making that assessment—Dr. Wobbrock's opinion adds nothing to a juror's understanding. *See*, *e.g.*, *Nosal*, 269 F.R.D. at 288 (holding "there is nothing 'expert'" about conclusion that a surface was not textured because "any person" can "easily" make the same determination). The same is true for Dr. Wobbrock's opinions about what is "important" to a device user, what may cause "user frustration," and what may "color" a user's perceptions. Members of the jury are regular users of mobile keyboards and will be capable of assessing these issues without the undue weight of unreliable expert opinion. *See*, *e.g.*, *Hayden*, 2025 WL 1697021, at *8 (excluding testimony

---

[7] *See also Hayden v. IBM Corp.*, 2025 WL 1697021, at *8 (S.D.N.Y. June 17, 2025) (holding that when expert "fails to set forth the criteria by which he judged" relevant issues "or demonstrate any methodologically sound basis for his conclusions besides a surface-level" analysis, "his opinion is not based on any sound methodology") (citation omitted); *Curtis v. Wilks*, 2013 WL 1283483, at *8 (N.D. Ill. Mar. 26, 2013) (expert's assertion that his "general observation and experience in renovations" supported his opinion on structural integrity of building was not a sufficient methodology under Rule 702); *Nosal v. Granite Park LLC*, 269 F.R.D. 284, 288 (S.D.N.Y. 2010) (excluding "plainly . . . *ipse dixit*" opinions where expert performed no testing and "failed to establish any basis for his conclusion"); *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 283 (S.D.N.Y. 2010) (rejecting opinions where experts "failed to explain the basis for their conclusion" and did not disclose the nature of a purported investigation because the court may not take an expert's "word as to the sufficiency" of the investigation).

"devoid" of any methodology because it would "be unhelpful to a jury" and create "a significant risk that the jury would give undue weight to expert opinion shorn of demonstrable, reliable methodology") (citation omitted).  Indeed, in his deposition, Dr. Wobbrock asserted he did not need to support his opinion that a negative keyboard experience could cause users to switch devices because it is "kind of common sense."  Wobbrock Tr. 158:19-20.

### B. Dr. Wobbrock's Rebuttal Opinions Confirm That His Opening Report Should Be Excluded and Are Likewise Inadmissible Under Rule 702

Dr. Wobbrock also submitted a rebuttal report that purports to respond to the opinions offered by Fotobom's damages expert, Marriane DeMario, who is an expert in valuation and loss calculation.  Dr. Wobbrock's rebuttal repeats his assertions that certain features of Fotobom's product would cause "a negative experience for users."  *See* Ex. M, Expert Rebuttal Rep. of J. Wobbrock (Aug. 6, 2025) ("Wobbrock Rebuttal Rep.") ¶¶ 5-12.  Dr. Wobbrock also performed a study comparing users' experience with Keyboard+ and Gboard that he submitted for the first time with his rebuttal report.  *See id*. ¶ 15 & Ex. B.  The study has multiple methodological flaws, not the least of which is that its participants were Dr. Wobbrock's friends and family.  Indeed, the study is so flawed that, when Fotobom's rebuttal expert identified a litany of errors in it during his deposition (because the study was not disclosed in Dr. Wobbrock's opening report and therefore could not be addressed in rebuttal), Dr. Wobbrock omitted participants and re-evaluated the data in the week between Fotobom's expert's deposition and his own.  Dr. Wobbrock's shifting survey results are not proper rebuttal and should be excluded for that reason alone.  They also fail to pass muster under Rule 702, as explained below.[8]

---

[8] Dr. Wobbrock's rebuttal offers critiques of certain inputs in Ms. DeMario's damages models based on his opinions from the opening report that "users would have been unlikely to have a good user experience with Keyboard+," Wobbrock Rebuttal Rep. ¶ 13, and the supposed "substantial functional limitations of Keyboard+ make it highly unlikely that Gboard usage can

1.    **Dr. Wobbrock's Opinions Are Not Within the Proper Scope of Rebuttal Testimony Under Rule 26**

Rule 26 permits rebuttal testimony only that is "intended solely to contradict or rebut evidence *on the same subject matter* identified by another party."  Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added).  "Such testimony cannot be used to advance new arguments or new evidence." *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17-18 (D.D.C. 2013) (citation omitted) (explaining that when proposed "rebuttal" testimony "is beyond the scope of appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a)").  The rule is an important procedural safeguard to prevent the kind of sandbagging that occurred here.  *See In re High-Tech Emp. Antitrust Litig.*, 2014 WL 1351040, at *12 (N.D. Cal. April 4, 2014) (striking part of rebuttal report because "Plaintiffs will not be allowed to 'sandbag' Defendants with new analysis that should have been included at the very least in [expert's] opening merits report").

In his "rebuttal," Dr. Wobbrock opines that the "Browser Use Case" of Fotobom's keyboard—i.e., the use of Fotobom's keyboard in a browser app as opposed to a messaging app or some other app installed on the device by virtue of the app being preloaded on the device— "has substantial limitations from a usefulness and usability standpoint," Wobbrock Rebuttal Rep. ¶ 11, and "the user would likely conflate the negative user experience with the device as a whole, leading to user disappointment with any Android device on which Keyboard+ was used as the keyboard," *id.* ¶ 12.  That is far outside the scope of Ms. DeMario's opinions, which concern the lost profits and lost business value caused by Google's alleged anticompetitive actions.  Ms. DeMario projected damages accounting for consumers' use of the keyboard in a browser app,

---

be reasonably extrapolated to Keyboard+ usage," *id.* ¶ 14.  These opinions should be excluded for the same reasons as (and along with) the opinions in his opening report.

but her analysis assumes liability and does not address the "usefulness and usability" of the Keyboard+ or how consumers would have perceived Fotobom's product (or Android devices more generally). *See*, *e.g.*, *Am. Customer Satisfaction Index, LLC v. ForeSee Results, Inc.*, 2023 WL 145000, at *7 (E.D. Mich. Jan. 10, 2023) (excluding as "outside of the scope of a proper rebuttal" opinions challenging damages expert's "purported failures" to establish causation where damages expert "did not opine substantively about the alleged wrong-doings").

Dr. Wobbrock's user study also falls far outside the scope of Ms. DeMario's opinions. Dr. Wobbrock conducted his user study "[t]o formally quantify the objective performance and subjective experience of entering text with Gboard and Keyboard+." Wobbrock Rebuttal Rep. ¶ 15. But Ms. DeMario offered no opinions about the performance or user experience of either Gboard or Keyboard+. Tellingly, Dr. Wobbrock makes no attempt to tie his user study to the opinions Ms. DeMario offered or engage with her financial modeling and analysis.

The true purpose of Dr. Wobbrock's study is obvious: it is a thinly veiled attempt to address the methodological shortcomings of his opening report. When asked at his deposition why he conducted empirical user testing for his rebuttal report, Dr. Wobbrock stated that "the only way to actually understand how users are going to regard this is if they can be systematically tested and use it." Wobbrock Tr. 234:15-19. This admission demonstrates exactly why the opinions in his opening report should be excluded. But it does not explain why Dr. Wobbrock waited until his rebuttal report to submit this empirical testing. In fact, he admitted at his deposition that "it wouldn't have hurt" to include empirical analysis in his opening report. *Id.* at 234:3. But he did not do so because he "had a lot of material to get through," *id.* at 234:11-12, and "limited, you know, time and hours in the day," *id.* at 234:5. The federal rules do not allow experts to retroactively fill the gaps in an opening report with

testimony improperly couched as rebuttal. *See Rekor Sys., Inc. v. Loughlin*, 2022 WL 2063857, at *7 (S.D.N.Y. June 8, 2022) ("a rebuttal report" is not "an opportunity to correct oversights in the party's case in chief); *Snider-Jefferson v. Amigo Mobility Int'l, Inc.*, 2016 WL 4424954, at *4 (E.D. Va. Aug. 17, 2016) ("An expert cannot bootstrap new opinions onto a rebuttal when those new opinions were available to the expert at the time of his initial disclosure.").[9]

The prejudice of allowing Dr. Wobbrock's improper rebuttal is particularly great because he continued to refine his testimony even after Fotobom's rebuttal expert was deposed. At his deposition, Dr. Wobbrock disclosed that, after reviewing the concerns about methodological rigor raised by Fotobom's rebuttal expert, he decided to make changes to his study—specifically, he omitted his five family members from the sample and re-evaluated the test data. *See* Wobbrock Tr. 270:10-19. This opinion was not disclosed in any expert report and should be struck. It is improper for Dr. Wobbrock to offer new opinions in his deposition when Fotobom has no opportunity to respond, particularly because Dr. Wobbrock was deposed *after* Fotobom's expert. *E.g.*, *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 2022 WL 278773, at *4 (D.D.C. Jan. 31, 2022) (excluding new data calculation because failure to timely disclose was "not harmless" when opposing party is deprived of opportunity to respond).

### 2. Dr. Wobbrock's Rebuttal Opinions and User Study Should Also Be Excluded Because They Are Unreliable and Unhelpful

Dr. Wobbrock's rebuttal report augments the opinions in his opening report by opining that the Browser Use Case discussed by Fotobom's damages expert "would be a negative

---

[9] *See also Cleaver v. Transnation Title & Escrow, Inc.*, 2024 WL 326848, at *5 (D. Idaho Jan. 29, 2024) (expert's rebuttal report "cannot cure the significant defects with his initial report" because "a party cannot use a rebuttal report to correct its initial report's deficiencies"); *Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale-Phase II LLC*, 2020 WL 13573984, at *6 (D. Ariz. Feb. 12, 2020) (excluding rebuttal reports where party attempts to "bolster and correct a flaw in its case-in-chief, which is improper rebuttal evidence").

experience for users." Wobbrock Rebuttal Rep. ¶ 5.  As noted above, he concludes that, whether used in a messaging application or a web browser, "a user would have a negative experience with Keyboard+" and that negative experience would lead to "user disappointment with any Android device on which Keyboard+ was used as the keyboard." *Id.* ¶ 12.  His analysis continues to be *ipse dixit*.  Dr. Wobbrock provides no support for any of his opinions and articulates no systematic methodology employed to reach them.

Reviewing only Fotobom animations demonstrating the keyboard's functionality, Dr. Wobbrock opines that its suggestions feature "would be a distracting interjection for a user who chose to open their browser to conduct a search," *id.* ¶ 7, would "likely confuse users who are trying to access information on the web," and "would likely lead to user frustration." *Id.* ¶ 8. But Dr. Wobbrock conceded that he conducted no formal evaluation beyond his own "inspection of the videos that portrayed these [features] and the screenshots."  Wobbrock. Tr. 224:3-4.  And his rebuttal report lacks any explanation of what that "inspection" consisted of, nor any explanation of how his experience supports the opinions.  *See Campbell*, 311 F. Supp. 3d at 302 (excluding unsupported opinions as "inadmissible *ipse dixit*").[10]  Dr. Wobbrock merely looked at images in the record and decided an average user would find the features depicted unsatisfactory. That is not a reliable methodology, for all the reasons explained above.  Moreover, jurors— average device users—do not require an expert to view the same evidence and draw their own

---

[10] For instance, after opining that the Browser Use Case would "likely confuse users" and "lead to user frustration" by presenting users with suggestions other "than their intended action," Dr. Wobbrock asserts that Google's concern for properly setting user expectations is why Google "clearly marks which search results are advertisements versus those that are not."  Wobbrock Rebuttal Rep. ¶ 8.  However, Dr. Wobbrock conceded at his deposition that he "[hadn't] done an evaluation of Google's search results concerning their ads" and that he was not opining that users prefer Google's marked advertisements.  Wobbrock Tr. 231:4-9.  His suggestion that users find Google's approach more satisfactory is based solely on his unsupported belief that "Google is very careful with their interface designs."  *Id*. at 230:12-22.

conclusions about what they find distracting or confusing. *See*, *e.g.*, *Libby*, 461 F. Supp. 2d at 12-13 (excluding opinions about principles neither "so complex or counter-intuitive that jurors do not understand them" when addressing issues jurors "personally faced" on "a daily basis").

Dr. Wobbrock's rebuttal study also suffers from profound methodological flaws that necessitate its exclusion under both Rules 702 and 403. *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 581 (S.D.N.Y. 2007) ("if the survey suffers from substantial methodological flaws, it will be excluded under both Rule 403 and Rule 702.").[11]

As an initial matter, the study suffers from the same issues as those in Dr. Wobbrock's opening report as to the versions of the keyboards that participants used. Participants compared an old, non-representative version of Keyboard+ to a current, updated version of Gboard. *See* Ex. N, Dep. Tr. of P. Parsons (Sept. 3, 2025) ("Parsons Tr.") 110:15-115:14. Thus, the results of the survey say nothing about the products at issue during the relevant time frame, making them unreliable and unhelpful under Rule 702 and likely to cause unfair prejudice and confusion under Rule 403. When material details are omitted from a survey, responses do not reliably demonstrate consumer's views. *See*, *e.g.*, *Ill. Tool Works Inc. v. Rust-Oleum Corp.*, 2018 WL 5810327, at *4 (S.D. Tex. Jun 21, 2018) (excluding survey that failed to "replicate market conditions" because it omitted details that could have affected consumer responses). In the trademark infringement context, for instance, courts routinely exclude surveys that attempt to measure consumer perceptions but fail to replicate actual market conditions because such

---

[11] *See also Avocados Plus Inc. v. Johanns*, 421 F. Supp. 2d 45, 57 (D.D.C. 2006) (expressing doubt that consumer survey could survive a *Daubert* examination given survey's methodological flaws); *Saxon Glass Techs., Inc. v. Apple Inc.*, 393 F. Supp. 3d 270, 286 (W.D.N.Y. 2019) (excluding survey evidence under Rules 702 and 403 because a "survey that fails to apply an appropriate methodology is essentially nothing more than a collection of hearsay, with no indicia of reliability"), *aff'd*, 824 F. App'x 75 (2d Cir. 2020).

surveys are unreliable and likely to skew results.  *E.g.*, *Vista Food Exch., Inc. v. Vistar Corp.*, 2005 WL 2371958, at \*5 (E.D.N.Y. Sept. 27, 2005); *Sears, Roebuck & Co. v. Menard, Inc.* 2003 WL 168642 (N.D. Ill. Jan. 24, 2003).

Several other issues with the survey demonstrate that Dr. Wobbrock did not employ a scientifically valid methodology.  The study involved only 20 participants recruited using convenience sampling, over half of which were his graduate students, and five of which were close family members, including his mother, daughter, and wife.  *See* Wobbrock Tr. 267:15-17, 276:6-18, 277:19-278:5.  Courts have raised concerns that convenience samples are unreliable.[12] Here, Dr. Wobbrock's use of family and friends could "significantly skew the results," particularly given the small sample size.  Parsons Tr. 116:5-14.  Dr. Wobbrock also admitted that, outside of litigation, he had never conducted a study where a quarter of the participants were family members and that he would not use family members in his academic work. Wobbrock Tr. 274:10-17.  Experts must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Sacchetti*, 344 F. Supp. 3d at 250; *Wilkerson v. Boston Sci. Corp.*, 2015 WL 2087048, at \*15 (S.D. W. Va. May 5, 2015) (excluding expert he "employed less intellectual rigor" in forming his expert opinions "than he employs when writing studies in his field").  Dr. Wobbrock did not.

In addition, 18 of the survey participants were iPhone users, not users of Android keyboards.  Such a narrow sample and disproportionate number of iPhone users presents an issue

---

[12] *See e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2021 WL 5916743, at \*6-7, 9 (N.D. Ohio Dec. 15, 2021) (excluding expert that relied on "an insufficient sample size" and did not address issues "resulting from the failure to use a random selection process"); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 984 F. Supp. 2d 1021, 1040 (C.D. Cal. 2013) (excluding report because "there is no reliable way to draw [general] conclusions" based on expert's use of non-random convenience sample).

of baseline keyboard familiarity that would bias the results absent adequate control measures.

Nonetheless, participants "transcribed" only "10 practice phrases" before completing the

remaining test phrases.  Wobbrock Rebuttal Rep., Ex. B at 2.  Dr. Wobbrock's sample may have

been convenient, "[b]ut convenience is not a substitute for reliability under *Daubert*."  *In re*

*Pella Corp. Architect & Designer Series Window Mktg., Sales Prac. and Prods. Liab. Litig.*, 214

F. Supp. 3d 478, 493 (D.S.C. 2016) (excluding product test based on convenience sample).[13]

The Court should exclude Dr. Wobbrock's unreliable study along with the rest of his opinions.

## II.    The Court Should Exclude Certain Opinions Offered by Mr. Sean Kruskol

Google retained Sean Kruskol to rebut the opinions offered by Fotobom's damages

expert, Marianne DeMario.  Mr. Kruskol does not offer an opinion that Fotobom suffered no

damages.  *See* Ex. O, Dep. Tr. of S. Kruskol (Oct. 24, 2025) ("Kruskol Tr.") at 75:7-76:14.  He

did not attempt to construct an alternative but-for world, *id*. at 84:16-85:2, and does not know

"what the alleged wrongful conduct is, when it occurred, and whether or not Fotobom and its

Keyboard+ app was subject to that alleged wrongful conduct," *id.* at 85:5-9.  Nonetheless, Mr.

Kruskol opines that Ms. DeMario should have "probability adjust[ed]" projected damages to

account for the possibility that certain events would not have occurred in a but-for world.  Ex. P,

Expert Rebuttal Rep. of S. Kruskol (Aug. 6, 2025) ("Kruskol Rebuttal Rep.") ¶¶ 77-88.  He also

proffers a calculation "[f]or illustrative purposes" that reduces lost profits by 99.7% and lost

---

[13] *See also Jimenez v. Allstate Ins. Co.*, 2019 WL 13088814, at *18 (C.D. Cal. May 13, 2019) (excluding unreliable where expert did not offer the "additional arguments . . . needed to justify the inferences" required to extrapolate broad results from unrepresentative sample); *In re: Autozone, Inc.*, 2016 WL 4208200, at *17 (N.D. Cal. Aug. 10, 2016) (rejecting survey where expert provided "no assurance" that small, unrepresentative sample supported expert's "sweeping[ ]" conclusions).

business value by 99.8% through eight arbitrary "adjust[ments]" to Ms. DeMario's models. *Id.* ¶¶ 17, 215-217 & figs. 17-18, Exs. 18-19. The Court should exclude both opinions.

A.    **Mr. Kruskol's Opinion That Ms. DeMario Should Have "Probability Adjusted" But-For World Events Is Incompatible with the Governing Legal Standard and Lacks a Reliable Methodology**

Ms. DeMario calculated Fotobom's lost profits and lost business value from Google's exclusionary conduct, assuming that Fotobom establishes liability. DeMario Rep. ¶¶ 47-100 (lost profits); *id.* ¶¶ 101-134 (lost business value). To calculate lost profits, Ms. DeMario used a well-established methodology: she calculated the amount of revenues Fotobom would have earned but for the alleged anticompetitive actions of Google and then subtracted the costs that Fotobom would have incurred to generate those revenues. *Id.* ¶¶ 47-48. To calculate lost value, Ms. DeMario converted projected cash flows to equity and then cross-checked her fair-market value calculation against benchmarks from guideline companies. *Id.* ¶¶ 113-122. Consistent with the typical practice of experts in the field, Ms. DeMario discounted both measures of damages to account for the costs of capital for a company such as Fotobom and the risks inherent in projected cash flows. *Id.* ¶¶ 50, 56, 99, 113-121.

Mr. Kruskol claims that Ms. DeMario should have further discounted her damages projections by "probability adjust[ing]" events she assumed would have occurred in a but-for world to account for the possibility those events would not have occurred. *See* Kruskol Rebuttal Rep. ¶¶ 77-88. But this probability adjustment effectively raises an antitrust plaintiff's burden of proof after wrongdoing and fact of damage are established. Allowing such an opinion would set a dangerous precedent and risks jury confusion. In addition, Mr. Kruskol's proffered correction for the absence of probability adjustments lacks any reliable methodology. Accordingly, the Court should exclude these aspects of his opinions under Federal Rules of Evidence 702 and 403.

1.      **Mr. Kruskol's Probability-Adjustment Opinions Undermine
        Established Law That an Antirust Plaintiff Need Only Offer a
        Reasonable Damages Estimate**

As noted above, Ms. DeMario's damages analysis assumes Fotobom has proven liability

at trial and projects the revenues Fotobom would have earned in connection with its business

partnerships, but for Google's alleged interference.  In the actual world, Fotobom established

partnerships with two large carriers, América Móvil and Verizon, as well as with a network of

advertisers capable of monetizing Keyboard+.  DeMario Rep. ¶¶ 13-41.  América Móvil was

poised to preload Keyboard+ after months of successful testing, but it reversed course after

telling Fotobom that "AMX and Google have a[] [Revenue Share] agreement in which we must

. . .] instruct to all OEMs to preload Google's keyboard . . . This is the reason for which we can't

not [sic] preload Fotobom keyboard."  *Id.* ¶ 33 (quoting FOTO_GOOG_0029149-150).  Verizon,

also a signatory to Google's Revenue Share Agreements, Forister. Rep. ¶¶ 86, 142, 668, did not

follow through with negotiations to preload Keyboard+ despite achieving the milestone of

successfully deploying Keyboard+'s precursor (software embedded into Verizon Messages) on

70 million Android devices.  DeMario Rep. ¶¶ 15-18, 63; DeMario Reply Rep. ¶ 24.  Ms.

DeMario projected Fotobom's revenue in a but-for world in which Google's Android agreements

did not prevent América Móvil and Verizon from preloading Fotobom's keyboard.  DeMario

Rep. Table. 1 (Damages Summary); *see also* DeMario Reply Rep. n.2 & Exs. AJ-AN.  In

addition, because a consumer uses the preloaded default keyboard for all applications across the

device, Ms. DeMario assumed that users would have been able to use Keyboard+ when

messaging other users (via SMS and messaging applications) and also in browsers (like Google

Chrome).  *See*, *e.g.*, DeMario Rep. ¶¶ 5, 10, 18, 26, 41, 44, 50, 79-91 & Tables 1, 4.

Mr. Kruskol claims that Ms. DeMario should have "probability adjust[ed]" the events she

assumed would have occurred in a but-for world.  *See* Kruskol Rebuttal Rep. ¶¶ 77-88.  Those

events include whether Fotobom would have entered into an agreement with Verizon to preload Keyboard+ and whether users would have used Keyboard+ in a browser (the "Browser Use Case").[14]  Kruskol Rebuttal Rep. ¶¶ 77-83, 86-88.  Mr. Kruskol then purports to correct for the lack of probability adjustments.  Yet he did so not by applying his own probability adjustments, but by eliminating *all* but-for revenues from Verizon subscribers and from use of Keyboard+ in a browser.  Kruskol Rebuttal Rep. ¶¶ 82, 87, fig. 1, fig 2, & Exs. 1, 2.

Mr. Kruskol's opinion that Ms. DeMario should have made mathematical probability adjustments to the events she assumed would have occurred in a but-for world is contrary to the legal principle that, once wrongdoing and the fact of damage are established, a plaintiff need only offer a *reasonable* damages estimate.  *See Tri Cnty. Indus., Inc. v. District of Columbia*, 200 F.3d 836, 841 (D.C. Cir. 2000); *Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003) (collecting cases stating that "a plaintiff must prove the fact of injury with reasonable certainty, [and prove] the amount of damages . . . based on a reasonable estimate") (citation omitted).  This is the law for good reason:  "If proof of a profit and loss history were required, no plaintiff could ever recover for losses resulting from his inability to enter a market."  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1478 (10th Cir. 1985).  This principle dates back to the Supreme Court's decision in *Eastman Kodak Co. of New York v. Southern Photo Materials Co.*, 273 U.S. 359 (1927), which emphasized that "a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible," *id.* at 378 (citation omitted).

---

[14] Ms. DeMario uses the shorthand "Messenger Use Case" and "Browser Use Case" to reflect the different uses of the keyboard and damages stemming from each, but the concept and functionality of the app is the same in both use cases.  *See, e.g.*, DeMario Rep. ¶ 10.

Reducing damages where a plaintiff cannot show with certainty that an event would have occurred in a but-for world imposes an additional, unsupported requirement for plaintiffs. According to Mr. Kruskol, Ms. DeMario should have accounted for the possibilities that in a hypothetical, competitive world Fotobom may not have entered into distribution contracts with Verizon and América Móvil to distribute Keyboard+, Kruskol Rebuttal Rep. ¶¶ 77(a)-(b) & (e), 79-83; that Fotobom may not have signed contracts with those carriers for two, consecutive, three-year agreements, *id.* ¶¶ 77(a)-(b), 79-83; that Fotobom may not have given users the capability to use Keyboard+ in browsers, ¶¶ 86-87; and that Fotobom may not have monetized Keyboard+ under the advertising metrics her calculations assume, ¶¶ 77(c), 88. From that (incorrect) premise, Mr. Kruskol *eliminates* major sources of projected cash flow—all cash flow from Verizon subscribers, *id.* ¶ 82 fig. 1 & Ex. 1; and all cash flow from using Keyboard+ in browsers, *id.* ¶ 87 fig. 2 & Ex. 2. But there is no legal basis for this reduction,[15] which is why Mr. Kruskol has never before "offered a conclusion in an antitrust case that a but-for world was likely to occur with a specific level of certainty," Kruskol Tr. 81:7-10, and does not "probability adjust inputs" when he is retained by a plaintiff but instead accounts for risk using a discount rate—just as Ms. DeMario did here, *id.* at 40:4-15, 50:8-51:18, 190:20-22. Indeed, Mr. Kruskol admitted that Ms. DeMario's approach of "discount[ing] the cash flows back at a discount rate that reflects the riskiness of the firm's cash flows" is "extraordinarily flexible" and can be used to "value firms . . . with negative earnings and cash flows." *Id.* at 148:2-149:3. Allowing Mr.

---

[15] For instance, this is not an issue of "loss causation," which in this case is "fairly straightforward." Ex. Q, Dep. Tr. of M. DeMario (Oct. 22, 2025) ("DeMario Tr.") 135:11-14. The trial evidence and Fotobom's economic expert will show that Google's exclusionary contracts "prevented [Fotobom] from preloading its keyboard and drove it out of business." *See id.* at 136:1-7.

Kruskol to present his probability-adjustment opinion to the jury for the first time in this case will cause prejudice and confusion.

Mr. Kruskol's admission that he eliminated certain cash flows wholesale because he did not know "[t]he form and format" probability adjustments would take, *id*. at 140:4-11, shows just how far his opinion departs from the governing legal standard. The reason that courts require antitrust damages to be measured with "reasonable certainty" and not "exactness" is that the defendant's "own wrong has prevented a more precise computation." *Bigelow v. RKO Radio Pictures, Inc*., 327 U.S. 251, 264-265 (1946). The law provides no support for Mr. Kruskol's contention that events assumed to occur in a but-for world should be thrown out unless their hypothetical, but-for probabilities can be calculated with mathematical precision. A but-for world—by its very nature—is "hypothetical." Kruskol Tr. 79:18-19. Take Verizon as an example. At his deposition, Mr. Kruskol acknowledged the evidence that Fotobom anticipated working with Verizon to "preload[ ] Keyboard+ after monetizing suggested actions in Verizon Messenger." *Id.* at 259:12-260:3. When asked why he "eliminate[d] all damages from Verizon" notwithstanding that evidence, he answered:

> I don't know what that means, 'anticipated.' *That does not sound like a 100 percent guarantee*, and I do not have the relevant information that I would need as a damages expert to critically analyze what the probability adjustments I would need to put forth a reliable and nonspeculative damage analysis.

*Id.* at 260:4-17 (emphasis added).

Mr. Kruskol's demand for a "100 percent guarantee" far exceeds the just and reasonable estimate of damages the law requires. The Court should exclude his probability-adjustment opinions, and the flawed calculations flowing from them, as legally irrelevant under Rule 702 and unduly prejudicial under Rule 403.

### 2.    Mr. Kruskol's Calculations Purporting To Correct for the Lack of Probability Adjustments Are Unreliable

There is also no methodology to Mr. Kruskol's calculations purporting to correct for the absence of "probability adjust[ments]."  As noted above, Mr. Kruskol did not attempt to apply any probability adjustment and instead just reduced certain damages to zero.  *See supra* pp. 32-35.  Rule 702 requires an expert to reliably apply a methodology to the facts of the case, *see Parsi*, 852 F. Supp. 2d at 88, which Mr. Kruskol (by his own admission) failed to do, *see*, *e.g.*, Kruskol Tr. 257:3-258:2 (testifying he did not know "all the steps that I would undertake" to perform probability adjustments); *see also id.* at 140:4-11, 199:7-15.  He also lacks any reliable basis for his calculations.  For instance, Mr. Kruskol testified that it is "important" for an expert to "accurately understand the but-for world that [they] are evaluating."  *Id.* at 78:19-22; *see also id*. at 79:1-5 (agreeing that an expert like himself cannot "reliably evaluate damages in a but-for world if you misunderstand the but-for world").  Yet he admitted that he has no understanding of Google's anticompetitive conduct or the time frame for Fotobom's alleged damages, *id.* at 85:5-9, and that he did not attempt to come up with assumptions for the but-for world, *id.* at 84:20-85:2.  The Court should exclude Mr. Kruskol's calculations for these reasons as well.  *See, e.g.*, *Apex Fin. Options, LLC v. Gilbertson*, 2022 WL 605692, at *4-6 (D. Del. Jan. 31, 2022) (excluding damages rebuttal opinion as "*ipse dixit* without any foundation" where expert failed to apply "an alternative methodology to the facts of the case").

### B.    Mr. Kruskol's "Illustrative" Damages Adjustment Is Unreliable

Mr. Kruskol also proffers a calculation "[f]or illustrative purposes only" that reduces lost profits damages by 99.7% and lost business value damages by 99.8% through "the combination" of eight adjustments to Ms. DeMario's damages model.  Kruskol Rebuttal Rep. ¶¶ 17, 215-217 & figs. 17-18, Exs. 18-19.  Several of those items—including eliminating the Browser Use Case, *id.*

¶ 215(b), and assuming one, three-year contract to distribute Keyboard+ with each of Verizon and América Móvil, *id.* ¶ 215(a)—flow from his premise that probability adjustments were required. He then makes other changes to various inputs in Ms. DeMario's models, calculating the percentage impact of all his changes together. *Id.* ¶¶ 215(c)-(h), 216. Fotobom does not challenge Mr. Kruskol's other critiques of Ms. DeMario's but-for world as those critiques are highly fact-based, but the Court should exclude the "illustrative" eight-factor damages calculation he offers in paragraphs 17 and 215 through 217 (and associated figures) because it does not result from the application of any reliable method to the facts at issue.

As Mr. Kruskol admitted in his deposition, his adjustment is not backed by any methodology at all. He admitted that the calculation is simply "illustrative" and that his "report does not describe a method explaining how [he] selected" the particular adjustments he made or the bases for those adjustments. Kruskol Tr. 198:1-8, 200:18-201:18. For example, his calculation assumes one three-year contract term, but he admits that he is "not taking a position on what the appropriate contract term is," making his opinion completely arbitrary. *Id.* at 201:17-18. His calculation also repeats his error of *eliminating* cash flows that were not probability adjusted. *See supra* pp. 32-35. Problematically, Mr. Kruskol did not isolate the individual impact of every adjustment, meaning there is no way of separating the arbitrary and legally faulty parts from the rest. *See* Kruskol Tr. 198:17-199:15 (admitting that he did not calculate the individual impact of "enter[ing] into one 3-year contract with Verizon and America Movil instead of two 3-year contracts," nor did he attempt to "calculate the probability" of this contract term in a "but-for world").

These errors render his analysis unreliable and the Court should exclude it. *See*, *e.g.*, *Apex Fin. Options, LLC*, 2022 WL 605692, at *4-6; *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,

571 F. Supp. 3d 106, 117 (S.D.N.Y. 2021) (excluding defense expert who opined on plaintiff's damages because the expert was unable to "articulate a valid basis" for his assumption); *Chesapeake Climate Action Network v. Exp.-Imp. Bank of U.S.*, 78 F. Supp. 3d 208, 219-20 (D.D.C. 2015) (excluding expert testimony at summary judgment because the court had "substantial difficulty in assessing the reliability of the principles or methodology used by [the expert] as required by Rule 702 because [the expert] has not identified any such principles or methodology"); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 641-48 (S.D.N.Y. 2016) (expert testimony failed *Daubert*'s "fit" requirement and was unreliable because it was based on "conjecture" and could not be "tested or challenged in any objective sense," as the expert "supplied virtually no insight into the considerations that shaped his quantitative analysis"), *aff'd*, 720 F. App'x 24 (2d Cir. 2017).

## III.    The Court Should Exclude Certain Opinions Offered by Dr. Kostis Hatzitaskos

### A.    The Court Should Exclude Dr. Hatzitaskos's Opinions Regarding the Quality, Value, and User Experience of Keyboard+

Dr. Kostis Hatzitaskos is an economist that Google retained to opine on economic issues related to Fotobom's claims and to respond to the opinions offered by Fotobom's economist, Dr. Eric Forister.  In addition to his economic opinions, Dr. Hatzitaskos offers a series of narrative judgments about the quality, purpose, and value proposition of Keyboard+.  For instance, he opines that Keyboard+'s "value proposition focused on monetization rather than the user experience," *see* Ex. R, Expert Rep. of K. Hatzitaskos (June 9, 2025) ("Hatzitaskos Rep.") ¶ 48, that it offered value "to the carrier—rather than the end user," *id.*, that it "interfered with the user experience," Ex. S, Expert Rebuttal Rep. of K. Hatzitaskos (Aug. 6, 2025) ("Hatzitaskos Rebuttal Rep.") ¶ 30, and that Fotobom made "no apparent investment" in baseline functionality, *id.* ¶ 57; *see also* Hatzitaskos Rep. § 3.2.4 (¶¶ 44-51), *id.* § 4.3.2 (¶ 129); *id.* § 5.1.2 (¶¶ 160-163,

167-168); Hatzitaskos Rebuttal Rep. § 4.3 (¶ 41); *id.* §§ 4.4-4.4.3 (¶¶ 45-57).  These opinions are

inadmissible under Rule 702 for three independent reasons: (1) Dr. Hatzitaskos is not qualified to

opine on software design, advertising technology, or user experience; (2) his opinions are

unsupported by any reliable methodology and amount to *ipse dixit*; and (3) his opinions fail Rule

702's helpfulness requirement because Dr. Hatzitaskos merely repackages selective deposition

testimony into advocacy-laden conclusions that do not assist the trier of fact.

### 1.      Dr. Hatzitaskos's Opinions Exceed His Qualifications

Under Rule 702, an expert may not "go beyond the scope of his expertise in giving his

opinion."  *Dome Patent, L.P. v. Rea*, 59 F. Supp. 3d 52, 57 n.5 (D.D.C. 2014) (citation omitted);

*see also Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*, 2024 WL

4534156, at *4 (D.D.C. July 16, 2024) ("As the gatekeepers, courts must ensure that an expert

witness's testimony is within the scope of his expertise and exclude testimony where it falls

outside that scope.").  As such, courts exclude economists who "advance [their] own opinion" on

non-economic matters without applying economic analysis.  *In re Elec. Books Antitrust Litig.*,

2014 WL 1282298, at *12 (excluding economist's opinions because he had "no special expertise

in publishing"); *see also Gamevice, Inc. v. Nintendo Co.*, 2020 WL 13739193, at *13 (N.D. Cal.

June 4, 2020) (excluding purportedly "economic" report where the conclusions were technical

and outside the expert's expertise).

Here, Dr. Hatzitaskos's expertise in economics does not qualify him to opine on technical

or consumer behavior topics such as Fotobom's design and business choices, the Keyboard+ user

experience, and mobile advertising.  These opinions require expertise in software design, user

experience, advertising, and business strategy—areas in which Dr. Hatzitaskos expressly

disclaimed expertise.  *See* Ex. T, Dep. Tr. of K. Hatzitaskos (Oct. 30, 2025) ("Hatzitaskos Tr.")

43:13-44:13; *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684, at *8 (C.D.

Cal. Jan. 25, 2010) (physics expert was not qualified to offer opinions on consumer perceptions because the expert "ha[d] no background or experience in marketing or advertising"), *aff'd in part*, 526 F. App'x 761 (9th Cir. 2013).[16]  This is evident from the fact Dr. Hatzitaskos's opinions are based on only documents and deposition testimony, *see* Hatzitaskos Tr. 264:4-16 (admitting that the basis for his opinions about Keyboard+'s value proposition "is just the deposition testimony"), and are caveated with the word "appears," *e.g.*, Hatzitaskos Rep. ¶¶ 50, 51, 129.  But an expert with no expertise in the field cannot base his opinions on just a "review of documents in the record."  *Inova Health*, 2024 WL 4534156, at *4; *see also In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 995-96 (C.D. Cal. Mar. 2012) (excluding an economist's genre classifications where he reviewed industry materials that did not supply the needed categorizations and then made a "subjective determination[s] based upon [his] opinion").  The Court should exclude Dr. Hatzitaskos's unqualified foray into issues relating to the quality, value, and user experience of Keyboard+.

### 2.    Dr. Hatzitaskos's Opinions Are Unreliable *Ipse Dixit*

Even if Dr. Hatzitaskos were qualified (he is not), his opinions are not the product of any reliable methodology.  He conducted no technical evaluation, advertising performance analysis, and no assessment of user experience, nor does he point to any such evaluations in the record.  Instead, he extrapolated sweeping conclusions about Keyboard+'s user experience and purpose, quality, and value from isolated deposition snippets and selective documents.  Expert opinions

---

[16] *See also LG Elecs. v. Whirlpool Corp.*, 2010 WL 3613814 at *5-6 (N.D. Ill. Sept. 3, 2010) (a technical expert with mechanical engineering expertise was not allowed to offer an opinion regarding consumer perception or linguistics); *Hackett v. Procter & Gamble Co.*, 2008 WL 4646049, at *2 (S.D. Cal. Oct. 17, 2008) (expert with educational background in chemistry and professional experience in research and development of hair dyes was not qualified to offer opinions involving issues of consumer perception of advertising or market research).

such as this that are grounded in "guesswork, speculation, and conjecture" are unreliable. *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 568 (D.C. Cir. 1993) (citation omitted).

Dr. Hatzitaskos has no basis for the technical conclusions he offers. For instance, he asserts that Keyboard+ was created by "overlaying a simplistic advertising feature" on the open-source keyboard, "with no apparent investment" in typing functionality. Hatzitaskos Rebuttal Rep. ¶ 57. He presents this conclusion as if it were the result of technical examination. It is not. It is a rephrasing of deposition snippets coupled with a citation to Dr. Wobbrock's unreliable report. *See id.* Dr. Hatzitaskos did not test the feature he labels "simplistic" and did not apply or detail any method for evaluating functionality. The conclusion is *ipse dixit*.

Dr. Hatzitaskos's own deposition testimony confirms that he lacks a sufficient factual foundation to offer the technical judgments his report contains. When asked what he understood Keyboard+'s advertising feature to be, he gave only a generalized description and pointed to screenshots in his report. Hatzitaskos Tr. 251:16-252:2. He then conceded those screenshots were "generally of the interface, not necessarily of the keyboard functionality." *Id.* at 253:5-7. And when asked about Keyboard+'s "content suggestion" feature, he testified the materials were "somewhat vague," that he was "not sure," and that he lacked "a very precise understanding," offering only a theory that Fotobom "was going to auction off local keywords" for advertising. *Id.* at 282:15-283:3. An expert who admits he does not understand the feature he is criticizing cannot reliably opine that it "harmed" user experience, was "simplistic," or reflects "no apparent investment." *See* Hatzitaskos Rep. ¶ 51; Hatzitaskos Rebuttal Rep. ¶ 57.

The same pattern appears in Dr. Hatzitaskos's user-testing narrative. For instance, he suggests Fotobom did not invest in testing because there were no "formal" paid studies. Hatzitaskos Rep. ¶ 45 n.97. But Fotobom's founder testified that Fotobom tested throughout

development, including internal testing, partner testing, and quality assurance work with external partners.  *See*, *e.g.*, Ex. U, Dep Tr. of A. LaForge (Mar. 14, 2025) at 90:5-22.  The documentary record likewise reflects partner testing.  *See* Forister Rep. ¶ 788 (citing FOTO_GOOG_0098307 at 307 (discussing "the process for preloading and testing" Keyboard+ with AMX).  Dr. Hatzitaskos did not account for this evidence before offering categorical conclusions about testing and "investment," nor does he point to any methodology he used to determine that Fotobom's user testing was unsound.  *See*, *e.g.*, Hatzitaskos Rep. ¶ 45; Hatzitaskos Rebuttal Rep. ¶ 57 (criticizing Fotobom's user testing with no standard or methodology applied).  These deficiencies underscore that he is selecting fragments to support a narrative rather than applying a reliable method.  *See*, *e.g.*, *Campbell*, 311 F. Supp. 3d at 300 (excluding testimony because the expert "ha[d] not identified any particular principles or methodology he used in forming his opinions"); *Chesapeake*, 78 F. Supp. 3d at 219 (excluding testimony as unreliable because the expert "ha[d] not identified any . . . principles or methodology[,] . . . [but] note[d] only that he reviewed certain documents and reached a series of conclusions").

### 3.    Dr. Hatzitaskos's Opinions Are Unhelpful

Dr. Hatzitaskos's opinions about the quality, value, and user experience of the products at issue do not apply economic tools to contested questions.  Instead, they supply a narrative gloss on selective deposition excerpts to argue Google's preferred story—that Keyboard+'s failure was Fotobom's fault rather than Google's substantial foreclosure of Fotobom's most effective distribution channel.  In offering his opinions, Dr. Hatzitaskos both mischaracterizes the evidence he cites and ignores large swaths of evidence contrary to his opinion.  But the point is not which narrative ultimately prevails at trial; it is that the jury does not need an economist to spin contested testimony into definitive judgments about product development and testing.  Courts exclude expert testimony that merely "construct[s] a factual narrative based upon record

evidence" because it does not help the factfinder and carries a serious risk of undue prejudice. *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 271-72 (D.D.C. 2018) (citation omitted); *see also Taylor v. Evans*, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) (excluding testimony for "presenting a narrative of the case which a lay juror is equally capable of constructing").

In addition, to the extent Dr. Hatzitaskos's opinions about Keyboard+'s "value proposition" purport to explain why Fotobom made design choices—what it "focused on," what it was directed at, what was "an afterthought"—that is improper testimony about Fotobom's motive and intent. *See* Hatzitaskos Rep. ¶ 48; Hatzitaskos Rebuttal Rep. ¶ 55. Courts routinely exclude such opinions—especially when offered by economists who are simply interpreting documents and testimony as any juror could—because they do not apply economic expertise and are too speculative to satisfy Rule 702. *See Second Chance Body Armor, Inc.*, 289 F. Supp. 3d at 155-58 (excluding speculative motive/intent opinions); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 53 (D.D.C. 2017) (excluding expert economist where he "simply read[] and interpret[ed]" evidence "as any juror might," and inferred intent from documents "unrelated to his or her economic expertise").

## B.    This Court Should Exclude Dr. Hatzitaskos's Opinions That Attempt To Relitigate Several Issues Decided in Prior Litigation

Expert testimony must be relevant to a "pertinent inquiry" and must help the jury resolve a live factual dispute. *Daubert*, 509 U.S. at 591-92. When a court has already resolved an issue such that the doctrine of issue preclusion applies, an expert cannot offer opinions contesting the issue. *See United States v. Sutton*, 642 F. Supp. 3d 57, 80 (D.D.C. 2022) ("[I]ssues [that] have been squarely decided . . . may not be the subject of testimony by an expert witness"); *Larson v. Tyson Fresh Meats, Inc.*, 2007 WL 162780, at *1 (D. Neb. Jan. 18, 2007) (precluding evidence and expert testimony disputing facts established by collateral estoppel); *Kirk v. Schaeffler Grp.*

42

*USA, Inc.*, 2015 WL 9413147, at *3 (W.D. Mo. Dec. 22, 2015) (permitting expert "testimony contesting what been established by collateral estoppel . . . would confuse the issues, mislead the jury, and unfairly prejudice Plaintiff").

As noted above, Plaintiff's motion for partial summary judgment seeks issue preclusion based on this Court's findings of fact and conclusions of law in the *Search Case* and the jury's verdict in the *Google Play Store Antitrust Litigation*.  Dr. Hatzitaskos attempts to relitigate several of these issues, including the importance of preloading and defaults (Hatzitaskos Rep. ¶¶ 20, 37-38, 65-67, 72, 74, 76-78, 139-141, 164-168; Rebuttal Rep. ¶¶ 41-42, 59, 212, 226-230, 256-260, 265-273, 278-289, 293-297) this Court's holdings that "competition for the contract" is not a defense to the exclusionary effects of Google's Android distribution agreements (Hatzitaskos Rep. ¶¶ 39-43, 124-130, 142-143; Rebuttal Rep. ¶¶ 135, 197-198, 199-200); Google's Android distribution agreements are exclusive (Hatzitaskos Rep. ¶¶ 20, 65-67, 74, 76; Rebuttal Rep. ¶¶ 14, 62-63, 205-206, 211-213, 217-220, 223, 226-231, 237-238, 240, 250-255); and security and competition with Apple are not procompetitive justifications (Hatzitaskos Rep. ¶¶ 18-19, 63, 72-73, 92-96, 107-110, 111-117, 131-141, 152-153; Rebuttal Rep. ¶¶ 10-11, 32-33, 78, 92-119, 120-134, 135-136, 142-149, 158-168, 169-171).  Dr. Hatzitaskos also challenges Fotobom's expert's opinions regarding the Android app distribution market and Google's market power in it (Hatzitaskos Rep. ¶¶ 160-161).  Should the Court grant Plaintiff's motion in whole or in part, it should exclude Dr. Hatzitaskos's opinions on the precluded issues.

## CONCLUSION

For the reasons above, the Court should exclude Dr. Wobbrock's opinions in their entirety and exclude certain opinions of Mr. Kruskol and Dr. Hatzitaskos.

Dated: January 15, 2026

/s/ *John Thorne*

John Thorne (Bar No. 421351)
Daniel G. Bird (Bar No. 974913)
Bethan R. Jones (Bar No. 156261)
Caroline A. Schechinger (Bar No. 1738087)
Reno G. Varghese (Bar No. 900269024)
Kaleb J. LeGore (Bar No. 90018004)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
jthorne@kellogghansen.com
dbird@kellogghansen.com
bjones@kellogghansen.com
cschechinger@kellogghansen.com
rvarghese@kellogghanse.com
klegore@kellogghansen.com

*Counsel for Plaintiff Fotobom Media*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 15, 2026, I served or caused to be served a true and correct copy of the foregoing upon the following counsel of record at the email addresses listed below:

John E. Schmidtlein (Bar No. 441261)
Aaron P. Maurer (Bar No. 476640)
Benjamin M. Greenblum (Bar No. 979786)
Colette T. Connor (Bar No. 991533)
Jesse T. Clay (Bar No. 1721523)
McKayla R. Robinson (Bar No. 1736048)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
amaurer@wc.com
bgreenblum@wc.com
cconnor@wc.com
jclay@wc.com
mrobinson@wc.com

/s/ *Bethan R. Jones*
Bethan R. Jones

KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.

*Counsel for Plaintiff Fotobom Media*